**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| | § | |
| **ROOSTER ENERGY, L.L.C., *et al.*[1]** | § | **Case No. 17-50705** |
| | § | |
| **Debtors.** | § | **(Joint Administration Requested)** |
| | § | **(Emergency Hearing Requested)** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING POST-PETITION USE OF CASH COLLATERAL, (II)
GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,
(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING,
AND (V) GRANTING RELATED RELIEF**

NOW INTO COURT, through undersigned counsel, comes Rooster Energy, L.L.C.,

Rooster Energy Ltd., Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Probe Resources US

Ltd., Cochon Properties, LLC, and Morrison Well Services, LLC (collectively, "Debtors"),

debtors and debtors-in-possession in the above-captioned case, who hereby move (the "Motion")

for entry of an interim order (the "Interim Order")[2], in the form attached hereto as Exhibit A,

and a final order (the "Final Order"), under Sections 105, 361, 362, and 363 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002 and 4001 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the

Bankruptcy Local Rules of the United States Bankruptcy Court for the Western District of

Louisiana (the "Bankruptcy Local Rules"), (i) authorizing the use of "cash collateral," as

defined in Bankruptcy Code Section 363(a) (the "Cash Collateral"), of the Prepetition Agent

(as defined below) and the Prepetition Secured Parties (as defined below); (ii) authorizing

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Rooster Energy, L.L.C. (7323); Rooster Energy Ltd. (9700); Rooster Petroleum, LLC (8665); Rooster Oil & Gas, LLC (8968); Probe Resources US Ltd. (0456); Cochon Properties, LLC (1694); and Morrison Well Services, LLC (9531). The Debtors' service address is 16285 Park Ten Place, Suite 120, Houston, TX 77084.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Interim Order

4820-4533-4336 v5
2909093-000015 06/02/2017

adequate protection to the Prepetition Agent and the Prepetition Secured Parties for any aggregate diminution in value of their respective interests in the Cash Collateral and Prepetition Collateral (as defined below); (iii) scheduling a hearing to consider the relief requested herein on a final basis (the "Final Hearing"); and (iv) granting related relief. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Kenneth F. Tamplain, Jr. in Support of First Day Motions* (the "Tamplain Declaration"). In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are Bankruptcy Code Sections 105, 361, 362, and 363, Bankruptcy Rules 2002, 4001, 6003 and 6004 and Bankruptcy Local Rule 9013-1.

## EMERGENCY CONSIDERATION

2.      In accordance with Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in obtaining the use of Cash Collateral would cause immediate and irreparable harm to the Debtors' operations.  Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the

2

Debtors' operations at this critical juncture. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## PRELIMINARY STATEMENT

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Tamplain Declaration, which is fully incorporated herein by reference.

4. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108. As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases, and no committee has been appointed.

5. The Debtors' access to Cash Collateral is critical to effectuate this restructuring. Without access to Cash Collateral, the Debtors will be unable to operate their businesses and their estates in order to maximize the value of their estates for the benefit of all the Debtors' stakeholders.

6. Angelo Gordon Energy Services, LLC (the "Prepetition Agent"), as administrative agent for the first lien noteholders (the "Prepetition Secured Parties"), has not consented to the Debtors use of the Prepetition Collateral, including, without limitation, the Cash Collateral. The K2 Principal Fund L.P., in its capacity as administrative agent for certain subordinate lien noteholders (Subordinate Secured Party #1") has not consented to entry of an

4820-4533-4336 v5
2909093-000015 06/02/2017

order. Chester F. Morrison, Jr. in his capacity as administrative agent for certain subordinate lien

noteholders ("Subordinate Secured Party #2") has consented to entry of an order.

## CONCISE STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b)

7. As required by Bankruptcy Rule 4001(b), the following is a summary of the

material terms of the Interim Order and the location of such provisions therein:[3]

| Summary of Material Terms | | Paragraph Reference |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(i) | Angelo Gordon Energy Services, LLC as administrative agent for the first lien noteholders and Subordinate Secured Party #1 and Subordinate Secured Party #2. | Findings, ¶ C |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) | Subject to the terms and conditions of the Interim Order, the Debtors are authorized to use Cash Collateral in accordance with the Budget during the period from the Petition Date through and including the Termination Date for working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief. | ¶¶ 2-3 |

---

[3] Unless otherwise indicated, capitalized terms used and not defined in this chart shall have the meanings set forth elsewhere in this Motion or in the Interim Order, as applicable. The summaries and descriptions of the terms and conditions of the Interim Order set forth herein are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms of the Interim Order and should only be relied upon as such. In the event that there is a conflict between this Motion and the Interim Order, the Interim Order shall control in all respects.

4820-4533-4336 v5
2909093-000015 06/02/2017

| Adequate Protection Bankruptcy Rule 4001(b)(1)(B)(iv) | As adequate protection, the Debtors will grant replacement liens to the Prepetition Agent and the Prepetition Secured Parties, on all post-petition Cash Collateral, all property of the Debtors that was subject to the Prepetition Liens (the "Prepetition Collateral"), and the proceeds thereof (the "Adequate Protection Liens") to secure an amount equal to the aggregate diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral in accordance with Bankruptcy Code Section 507(b). The Debtors will also comply with the reporting requirements and budgetary constraints as outlined in greater detail in the Interim Order.<br><br>Because the Prepetition Agent and Prepetition Secured Parties are undersecured, the Interim Order does not provide adequate protection to the Subordinate Secured Party #1 or Subordinate Secured Party #2. | ¶¶ 5-6 |
| --- | --- | --- |

## THE DEBTORS' PREPETITION CAPITAL STRUCTURE

### A.    The Debtors' Business Operations

8.     Rooster Energy Ltd. ("Rooster Canada"), a British Columbia, Canada corporation whose stock is publicly traded on the TSX Venture Exchange, is the parent company of the Debtors.   Rooster Canada conducts business through its wholly owned subsidiaries, Rooster Energy, L.L.C., Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Probe Resources US Ltd., Cochon Properties, LLC and Morrison Well Services, LLC.

9.     Rooster Petroleum, LLC ("Rooster Petroleum") is the designated operator for four of the Oil and Gas Leases (the "Operated Leases").  Of these Operated Leases, Rooster Oil & Gas, LLC ("Rooster Oil") owns a 100% working interest in East Cameron Block 246 (OCS-G-34236), Eugene Island Block 44 (OCS-G-34289), Grand Isle Block 70 (OCS-G-27949), and Vermilion Block 376 (OCS-G-14428) (with the exception of two wells at Vermilion 376, in which it owns 95%).  Rooster Petroleum is still recognized as the qualified operator of several

4820-4533-4336 v5
2909093-000015 06/02/2017

other Operated Leases that have expired but having remaining infrastructure that must be removed.

10.    Cochon Properties, LLC ("Cochon") is the designated operator and the owner of a 100% working interest in one Operated Lease located at Vermilion Block 67 (OCS-G-00560). Cochon is still recognized as the qualified operator of one other Operated Lease that is expired but has remaining infrastructure that must be removed.

11.    Rooster Oil also owns non-operating working interests in two leases (the "Non-Operated Leases"): a 34% working interest at Ship Shoal Block 79 (OCS-G-15277) and a 16.6% working interest at West Cameron Block 215 (OCS-G-04087) that are producing and operated by third parties.

12.    Morrison Well Services, LLC, ("Well Services") provides oil and gas well intervention services the majority of which consists of well plugging and abandonment services ("P&A") in the shallow waters of the Gulf of Mexico with 16 rigless complementary sets of P&A equipment, or "spreads". A spread generally consists of a pump powered by a diesel engine, wireline units, cement blenders, tanks and assorted tools. The combined expertise of the Debtors' oil & gas production and P&A engineers of Well Services allows the Debtors to provide its customers with extensive technical support, exceptional safety performance and high quality customer service. The Debtors' customers include many of the largest operators of wells in the Gulf of Mexico. In addition to its work for third party customers, the Well Services business is strategic to the Debtors' oil & gas production business, because the Debtors utilize the Well Services business to evaluate and acquire mature fields with exploitable upside for minimal costs. Through the utilization of Well Services' P&A expertise, the Debtors are able to cost effectively manage their own asset retirement obligations of the oil and gas operations.

6

## B.    The Debtors' Prepetition Debt

    (a)    *Senior Secured Debt*

13.    Prior to the Petition Date, the Debtors entered into various financing arrangements. The outstanding indebtedness of the Debtors as of the Petition Date is summarized below.

14.    On November 17, 2014, the Debtors entered a note purchase agreement ("NPA") pursuant to which the Debtors issued senior secured notes in the amount of $45.0 million due on February 14, 2016, as amended. The proceeds of the senior secured notes were used to: 1) repay existing senior debt; 2) fund the $10 million cash portion of the purchase price for Well Services; and 3) pay trade accounts payable over sixty days and provide for other general corporate purposes.

15.    On June 25, 2015, the Debtors expanded and extended the term of the NPA by entering into an amendment and restatement of the NPA (the "A&R NPA") and issuing new notes in the amount of $60 million that are due on June 25, 2018 (the "Senior Secured Notes"). A portion of the proceeds were used to repay existing senior secured debt in the principal amount of $45 million. As part of the A&R NPA, the Debtors granted the note holders certain overriding royalty interests in all of the Groups' oil & gas leases which interests at the time were valued at approximately $2.4 million.

16.    On March 14, 2016, the Debtors entered into the First Amendment and Waiver to the A&R NPA (the "First Amendment"), effective December 31, 2015. Pursuant to the First Amendment, all of the financial and performance covenants of the A&R NPA and scheduled loan amortization were waived for the fiscal quarters ending March 31, 2016 and June 30, 2016. In exchange for the waiver, Rooster Canada paid a waiver fee in the amount of $493,333 on

4820-4533-4336 v5
2909093-000015 06/02/2017

March 14, 2016. The Senior Secured Notes bear interest at a rate equal to Libor + 11.5% per annum with interest payments due monthly; the minimum interest rate is 13.0% per annum. Additionally, from and after March 14, 2016 until June 30, 2016, an 8.0% interest is paid in kind ("PIK Interest"). All PIK Interest is capitalized and compounded by increasing the outstanding principal amount of the Senior Secured Notes. The Debtors' general and administrative costs are not allowed to exceed stipulated limits for the fiscal quarter ending March 31, 2016, and each fiscal quarter thereafter. Pursuant to the First Amendment, the Debtors must comply with the terms of a budget approved by the Senior Secured Noteholders (the "Approved Budget").

17.     On March 16, 2016, the Debtors fixed the price on derivative commodity contracts with settlement dates in April, May, and June 2016, and terminated all derivative commodity contracts with settlement dates on or after July 1, 2016. The Debtors then applied $4.0 million of the proceeds to reduce the principal balance of the Senior Secured Notes.

18.     On July 14, 2016, the Debtors entered into the Second Amendment and Waiver to the A&R NPA (the "Second Amendment"), effective June 30, 2016. The Second Amendment waived (i) all defaults under the Approved Budget as stipulated in the First Amendment, (ii) the minimum EBITDAX and leverage ratio covenants of the A&R NPA for the fiscal quarter ending September 30, 2016, and (iii) the asset coverage ratio covenant for the fiscal quarter ending December 31, 2016. The scheduled loan amortization was replaced with a requirement for principal repayments summing to no less than $7,532,000 for the six months ending December 31, 2016. The Senior Secured Notes continue to bear interest at a rate equal to Libor + 11.5% per annum (minimum of 13.0%) with interest payments due monthly. The Senior Secured Notes also continue to bear additional PIK interest until December 31, 2016 at a rate of 8.0%. The Debtors failed to pay the principal repayment required on December 31, 2016.

4820-4533-4336 v5
2909093-000015 06/02/2017

19.     On February 3, 2017, the Debtors and the Prepetition Agent entered into a Limited Forbearance and Reservation of Rights Agreement (the "Forbearance Agreement"), whereby the Prepetition Agent agreed to forbear from exercising certain rights and remedies under the A&R NPA.  The Forbearance Agreement terminated on March 3, 2017.

20.     The Debtors entered into a Third Amendment and Waiver to the A&R NPA (the "Third Amendment") with the Prepetition Agent on March 10, 2017.  On March 24, 2017, the Debtors entered into a non-binding term sheet setting forth the general terms of a potential acceptable restructuring of the A&R NPA.  However, the Debtors and the Prepetition Agent were unable to implement the term sheet through a comprehensive restructuring agreement.

21.     Currently, the outstanding principal balance of the Senior Secured Notes is approximately $53.1 million.

(b)     *Junior Secured Debt*

22.     On April 26, 2012, the Debtors entered into secured credit facilities (the "Subordinate Note #1") with The K2 Principal Fund, L.P. for the principal sum of $6,463,000; effective November 17, 2014, the interest rate was set at 15.5%.

23.     On October 11, 2013, the Debtors entered into another secured credit facility (the "Subordinate Note #2") with The K2 Principal Fund, L.P., as a lender and the administrative agent, and Chester F. Morrison, Jr. (a significant shareholder) that provided for borrowing up to CAD $8.0 million. The interest rate is 9% per annum on all advances, and the only advance under the credit facility was CAD $4.0 million.

24.     On March 7, 2014, the Debtors entered into an additional secured credit facility with Chester F. Morrison, Jr. (the "Subordinate Note #3") which provides for borrowing up to

9

$10 million. The interest rate is 14% per annum on all advances. The initial advance in March, 2014, was $4.4 million; in May, 2014, the Debtors drew an additional $2.8 million.

25. In connection with the Senior Secured Notes, the Prepetition Secured Parties, the Debtors and each of the parties to the Subordinate Note #1, Subordinate Note #2 and Subordinate Note #3 (see the Debtors' December 31, 2015 financial statement notes 10(ii), (iii) and (iv)) entered into intercreditor and subordination agreements that prohibit any payments on the Subordinate Secured Debt until the Senior Secured Notes are fully satisfied. Additionally, the Subordinate Note #1, Subordinate Note #2 and Subordinate Note #3 were amended to extend the maturity date of each of those loans to no earlier than one year following the maturity date of the Senior Secured Notes.

26. As a result of the extension of maturity dates on the Subordinate Note #1, Subordinate Note #2 and Subordinate Note #3 until after satisfaction of obligations of the Debtors owed on the Senior Secured Notes, the maturity dates for all secured indebtedness is extended to June 25, 2019.

27. Currently, the outstanding principal balance of the Subordinate Secured Debt is approximately $24 million.

(c) *Other Secured Debt*

28. In the ordinary course of business, the Debtors routinely transact business with a number of third-party contractors and vendors who may seek to assert privileges or liens against the Debtors and their property (such as equipment and, in certain circumstances, mineral interests and leases) if the Debtors fail to pay for the goods delivered or the services rendered. These parties perform various services for the Debtors, including, without limitation, manufacturing and repairing equipment and component parts necessary for the Debtors' oil field

4820-4533-4336 v5
2909093-000015 06/02/2017

activities, contracting, drilling, hauling, and supplying oil and gas related services, as well as shipping the Debtors' products.

(d)    *Trade Debt*

29.    In the ordinary course of business, the Debtors incur trade debt with numerous vendors in connection with products and services that support their oil and gas exploration, development, production and decommissioning activities.   On the Petition Date, the Debtors' unsecured trade debt is approximately $7.1 million in the aggregate, payable to approximately 200 creditors on account of prepetition goods and services provided to the Debtors.  This amount excludes approximately $10.2 million of long-term trade debt owed to Chet Morrison Contractors, LLC, a non-debtor entity owned indirectly by Chester F. Morrison, Jr., the chairman of Rooster Canada and one of its major shareholders, both directly and indirectly, and approximately $800,000 of unsecured payables related to excess working capital delivered when Rooster Canada purchased Cochon and Well Services in 2014.

(e)    *Hedging Agreements*

30.    To reduce its exposure to declines in oil and natural gas prices, Rooster Petroleum, LLC, entered into a prepetition hedging arrangement with BP Energy Company ("BP") pursuant to that certain ISDA 2002 Master Agreement dated November 14, 2014 and the confirmation of transaction dated July 14, 2016 (collectively, the "Hedging Agreement").

(f)    *Performance Bonds*

31.    As a lessee and operator of oil and gas leases on the OCS in the Gulf of Mexico, the applicable   Debtors must comply with, among other things, rules and regulations promulgated by the Bureaus of Ocean Energy Management ("BOEM"). In particular, the Debtors have provided  financial assurances to BOEM ( and in limited instances to the Debtors'

4820-4533-4336 v5
2909093-000015 06/02/2017

successors in lease title) in order to comply with such regulations, including the payment of royalties due under leases and as security to assure satisfaction of well P&A obligations. Historically, to meet BOEM's financial assurance requirements, the Debtors have provided surety bonds issued by private insurance or surety companies to BOEM. Below is a table summarizing the outstanding surety bonds issued for the Debtors, by entity and lease. All of the surety bonds are guaranteed by third parties and some are also secured by cash (or cash equivalent) collateral:

| AREA/BLOCK | BOND NUMBER | TYPE BOND | AMOUNT OF BOND | GUARANTY or COLLATERAL | OBLIGEE | SURETY |
|---|---|---|---|---|---|---|
| **Rooster Petroleum, LLC, and Rooster Oil & Gas, LLC** | | | | | | |
| HI A494 OCS-G 3244 | SU46251 | Supplemental | $3,060,000.00 | CMC LC & Rooster Cash | BOEM | Aspen Insurance |
| EI 28 - OCS-G 05479 | SU46253 | Supplemental | $1,820,000.00 | CMC LC & Rooster Cash | BOEM | Aspen Insurance |
| GA 223 - OCS-G 03738 | SU46252 | Supplemental | $20,000.00 | CMC LC & Rooster Cash | BOEM | Aspen Insurance |
| GI 70 OCS-G27949 | SU46257 | Supplemental | $900,000.00 | CMC LC & Rooster Cash | BOEM | Aspen Insurance |
| HI 115 OCS-G 18936 | SU46256 | Supplemental | $490,000.00 | CMC LC & Rooster Cash | BOEM | Aspen Insurance |
| EI 44 OCS-G 34289 | SU46258 | Supplemental | $300,000.00 | CMC LC & Rooster Cash | BOEM | Aspen Insurance |
| Texas | B003988 | Areawide Operator | $25,000.00 | CMC & Chet, et al | TX Railroad Comm | US Specialty |
| OCS | B003203 | Area Pipeline ROW | $300,000.00 | CMC & Chet, et al | MMS/BOEM | US Specialty |
| OCS(CA 63 & CSP Pipeline on) | B004123 | Area Pipeline ROW | $300,000.00 | CMC & Chet, et al | MMS/BOEM | US Specialty |
| Belle Isle/LA SL #9680 (CA 63) | B003539 | Performance | $250,000.00 | CMC & Chet, et al | LA Office of Conservation | US Specialty |
| EC 39 - OCS-G 34792 | B008035 | Lease Specific | $50,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| EC 246 OCS-G 34236 | B007641 | Lease Specific | $50,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| EI 44 - OCS-G 34289 | B007640 | Lease Specific | $50,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| HI 154 - OCS-G 2357 | B008698 | Lease Specific (RUE) | $950,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| HI A-494 - OCS-G 03244 | B004251 | Performance | $500,000.00 | CMC & Chet, et al | Hunt Petroleum Company | US Specialty |
| VR 20 OCS-G 34799 | B007974 | Lease Specific | $50,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| SS 172 OCS-G 35234 | B008671 | Lease Specific | $50,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| VR 376 OCS-G 14428 | B007250 | Performance | $2,250,000.00 | CMC & Chet, et al | Apache | US Specialty |
| WC 215 OCS-G 04087 | B005252 | Performance | $150,000.00 | CMC & Chet, et al | Hunt Petroleum Company | US Specialty |
| EC 37 OCS-G35577 | B009330 | Lease Specific | $50,000.00 | CMC & Chet, et al | BOEM | US Specialty |
| OCS | B003204 | Areawide Operator | $3,000,000.00 | CMC & Chet, et al | MMS/BOEM | US Specialty |
| | | | | | | |
| **Rooster Total** | | | **$14,615,000.00** | **$1,696,800.00** | | |
| | | | | | | |
| **Cochon Properties, LLC** | | | | | | |
| VR 67 OCS-G 0560 | 105812476 | Supplemental | $5,280,000.00 | Nexen only | BOEM | Travelers |
| WD 44 OCS-G 0137 | 105812474 | Supplemental | $2,070,000.00 | Nexen only | BOEM | Travelers |
| WD 45 OCS-G 0138 | 105812475 | Supplemental | $11,305,000.00 | Nexen only | BOEM | Travelers |
| EI 18 Field Leases (9) | B007276 | Performance | $1,250,000.00 | CMC & Chet | LA Office of Conservation | US Specialty |
| VR 67 OCS-G 0560 | B008092 | Lease Specific | $500,000.00 | CMC & Chet | BOEM | US Specialty |
| WD 44 OCS-G 0137 | B008093 | Lease Specific | $500,000.00 | CMC & Chet | BOEM | US Specialty |
| WD 45 OCS-G 0138 | B008094 | Lease Specific | $500,000.00 | CMC & Chet | BOEM | US Specialty |
| Gulf Of Mexico | B008095 | Area Pipeline ROW | $300,000.00 | CMC & Chet | BOEM | US Specialty |
| | | | | | | |
| **Cochon Total** | | | **$21,705,000.00** | **$0.00** | | |
| | | | | | | |
| **Probe Resources US Ltd.** | | | | | | |
| EC 37 OCS-G 30304 | SU46274 | Supplemental (RUE) | $165,000.00 | CMC & Rooster | BOEM | Aspen Insurance |
| EC 246 OCS-G 24805 | RLB0011723 | Lease Specific | $500,000.00 | | BOEM | RLI Insurance |
| ST 214 OCS-G24979 | RLB0012256 | Lease Specific | $500,000.00 | | BOEM | RLI Insurance |
| ST 198 OCS-G30111 | RLB0012365 | Supplemental | Cancelled | | BOEM | RLI Insurance |
| ST 198 OCS-G32214 | RLB0013233 | Supplemental | Cancelled | | BOEM | RLI Insurance |
| ST 198 OCS-G32214 | RLB0012618 | Lease Specific | $500,000.00 | $500,000.00 | BOEM | RLI Insurance |
| ST 198 RUE | RLB0011943 | Performance | Cancelled | | Apache & Maritech | RLI Insurance |
| Gulf of Mexico | RLB0012366 | Area Pipeline ROW | $300,000.00 | $300,000.00 | BOEM | RLI Insurance |
| | | | | | | |
| **Probe Total** | | | **$1,965,000.00** | **$800,000.00** | | |
| | | | | | | |
| **GRAND TOTAL** | | | **$38,285,000.00** | **$2,496,800.00** | | |

12

### C. The Debtors' Deposit Accounts and Cash Balances

32.     As of the Petition Date, the Debtors' aggregate cash balance in the operating accounts was approximately $2.3 million. As contemplated by the Third Amendment, the Prepetition Secured Parties assert that all deposit accounts are subject to the Prepetition Liens of the Prepetition Secured Parties, and, therefore, that all cash balances held in the aforementioned accounts constitute Cash Collateral.

### D. The Debtors' Cash Management System

33.     As described in more detail in the Debtors' Motion for entry of an order authorizing the Debtors to (i) maintain and use their existing bank accounts, cash management system, and business forms, (ii) honor certain prepetition obligations related thereto, and (iii) continue to perform intercompany transactions in the ordinary course of the Debtors' businesses. (the "Cash Management Motion"), filed contemporaneously herewith, the Debtors use a Cash Management System.

34.     A summary of the Cash Management System and the Debtors' bank accounts (the "Bank Accounts") is described in the table below

| Account Holder | Bank Name | Account No. | DACA Status | Purpose |
|---|---|---|---|---|
| Rooster Energy Ltd. | Amegy Bank, Houston TX | x7125 | Blocked | Operating Account; Funds from subsidiaries' Main Accounts are swept into this account at the end of each day. |
| Rooster Energy Ltd. | Amegy Bank, Houston TX | x7117 | Springing | Disbursement Account; Funds are transferred into this account from the Operating Account to be allocated to the subsidiaries' disbursement accounts according to the Secured Lender's approved budget. |
| Rooster Petroleum, LLC | Amegy Bank, Houston TX | x4796 | Blocked | Main Account; Revenue of Rooster Petroleum, LLC is paid into this account, and funds are swept daily from this account |

13

4820-4533-4336 v5
2909093-000015 06/02/2017

| | | | | |
|---|---|---|---|---|
| | | | | to Rooster Energy, Ltd.'s Operating Account. |
| Rooster Petroleum, LLC | Amegy Bank, Houston TX | x4826 | Springing | Revenue Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to pay royalties. |
| Rooster Petroleum, LLC | Amegy Bank, Houston TX | x4834 | Springing | Payroll Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to pay employees. |
| Rooster Petroleum, LLC | Amegy Bank, Houston TX | x4818 | Springing | AP Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to pay accounts payable. |
| Rooster Oil & Gas, LLC | Amegy Bank, Houston TX | x5237 | Blocked | Main Account; Revenue of Rooster Oil & Gas, LLC is paid into this account, and funds are swept daily from this account to Rooster Energy, Ltd.'s Operating Account. |
| Cochon Properties, LLC | Amegy Bank, Houston TX | x1789 | Blocked | Main Account; Revenue of Cochon Properties, LLC is paid into this account, and funds are swept daily from this account to Rooster Energy, Ltd.'s Operating Account. |
| Cochon Properties, LLC | Amegy Bank, Houston TX | x1797 | Springing | AP Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to pay accounts payable. |
| Cochon Properties, LLC | Amegy Bank, Houston TX | x1805 | Springing | Revenue Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to pay royalties. |
| Morrison Well Services, LLC | Amegy Bank, Houston TX | x1813 | Blocked | Main Account; Revenue of Morrison Well Services, LLC is paid into this account, and funds are swept daily from this account to Rooster Energy, Ltd.'s Operating Account. |
| Morrison Well Services, LLC | Amegy Bank, Houston TX | x1821 | Springing | AP Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to |

4820-4533-4336 v5
2909093-000015 06/02/2017

| | | | | pay accounts payable. |
|---|---|---|---|---|
| Morrison Well Services, LLC | Amegy Bank, Houston TX | x1839 | Springing | Revenue Account; After receipt of funds transferred from Rooster Energy Ltd. Disbursement Account, funds are used to pay employees. |

35. Pursuant to pre-existing directions and arrangements with third party payors, all revenue generated by the Debtors is deposited into the Main Accounts for each of the four main operating subsidiaries: Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Cochon Properties, LLC, and Morrison Well Services, LLC.  Probe Resources US Ltd., which no longer generates oil and gas production revenues, has no bank accounts.

**E. The Value of the Prepetition Secured Collateral**

36. The Debtors estimate the value of the Prepetition Secured Collateral as follows:

4820-4533-4336 v5
2909093-000015 06/02/2017

| | Estimated Valuation Of Collateral | | | Notes |
|---|---|---|---|---|
| | **Low** | **Mid** | **High** | |
| | | | | Valuation derived utilizing a market |
| PDP Reserves Valuation (VR 67) | | | | discount to NPV-10% |
| Future Net Revenues @ NPV-10% | $ 20,755,095 | $ 20,755,095 | $ 20,755,095 | |
| Market Discount | -87.5% | -75.0% | -62.5% | |
| Current Market Valuation Of PDP Production | $ 2,594,387 | $ 5,188,774 | $ 7,783,161 | |
| | | | | |
| | | | | Valuation derived utilizing a discount to |
| MWS Equipment | | | | replacement value |
| Number Of Spreads | 16 | 16 | 16 | |
| Replacement Value Per Spread | $ 1,056,368 | $ 1,056,368 | $ 1,056,368 | |
| Replacement Value Of MWS Equipment | $ 16,901,888 | $ 16,901,888 | $ 16,901,888 | |
| Market Discount | -75.0% | -50.0% | -25.0% | |
| Current Market Valuation Of MWS Equipment | $ 4,225,472 | $ 8,450,944 | $ 12,676,416 | Depreciated book value @ $5.7 million |
| | | | | |
| | | | | Valuation derived utilizing a discount to |
| Decommissioning Contracts | | | | estimated margin |
| Estimated Margin @ Eugene Island 18 | $ 7,015,457 | $ 7,015,457 | $ 7,015,457 | |
| Market Discount | -75.0% | -50.0% | -25.0% | |
| Current Market Valuation Of EI 18 Contract | $ 1,753,864 | $ 3,507,728 | $ 5,261,592 | |
| | | | | |
| Estimated Margin @ Vermilion 67 | $ 7,500,000 | $ 7,500,000 | $ 7,500,000 | |
| | | | | Risk associated with estimating margin |
| Market Discount | -100.0% | -87.5% | -75.0% | in 2026 result in significant discount |
| Current Market Valuation Of VR 67 Contract | $ - | $ 937,500 | $ 1,875,000 | |
| | | | | |
| Remaining Payment @ Ship Shoal 321 | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | |
| | | | | |
| Current Market Valuation Of Decom Contracts | $ 3,753,864 | $ 6,445,228 | $ 9,136,592 | |
| | | | | |
| Cash | $ 2,000,000 | $ 2,000,000 | $ 2,000,000 | |
| | | | | |
| Accounts Receivable | | | | |
| Oil & Gas Production | $ 888,079 | $ 888,079 | $ 888,079 | |
| JIBs | $ 464,120 | $ 464,120 | $ 464,120 | |
| Morrison Well Services | $ 2,309,645 | $ 2,309,645 | $ 2,309,645 | |
| Total Accounts Receivable | $ 3,661,843 | $ 3,661,843 | $ 3,661,843 | |
| | | | | |
| Probe Resources, US, Bond Collateral | | | | |
| Bond Collateral | $ 800,000 | $ 800,000 | $ 800,000 | |
| | | | | Discount reflects risk associated with |
| Market Discount | -75.0% | -50.0% | -25.0% | wells' potential need for remedial work |
| Current Market Valuation Of Bond Collateral | $ 200,000 | $ 400,000 | $ 600,000 | |
| | | | | |
| | | | | Due upon full satisfaction of |
| Promissory Note Due From Chet Morrison | | | | Subordinated Note #3 by Rooster Oil & |
| Promissory Note + Accrued Interest | $ 4,365,068 | $ 4,365,068 | $ 4,365,068 | |
| Market Discount | -100.0% | -75.0% | -50.0% | |
| Current Market Valuation Of Promissory Note | $ - | $ 1,091,267 | $ 2,182,534 | |
| Current Market Valuation Of Other Assets | $ 5,861,843 | $ 7,153,110 | $ 8,444,377 | |
| | | | | |
| **Total Collateral** | **$ 16,435,566** | **$ 27,238,056** | **$ 38,040,546** | |

37.    Based on the above, the Debtors estimate that their assets – and the Prepetition Secured Lenders' collateral, is worth approximately $16.4 million on the low case and $38 million on the high case, with a mid-case of $27.2 million. Accordingly, under any scenario, the Debtors assert that the Prepetition Secured Lenders are undersecured.

16

4820-4533-4336 v5
2909093-000015 06/02/2017

38.     The Debtors, and in particular Well Services has decommissioning contracts that should generate $14 million in gross revenue, and approximately $7 million in profit before year end, if the Debtors are able to use the Cash Collateral to complete the contract.

## F.     Negotiations Regarding the Use of Cash Collateral

39.     The Debtors have attempted to negotiate the terms for use of the Cash Collateral with the Prepetition Agent and the Prepetition Secured Parties; however, such negotiations have not been fruitful.  This failure is primarily the result of the Prepetition Secured Parties' refusal to disburse funds to  the Debtors to operate their oil and gas production business and fund expenses associated with maintaining Rooster Energy, L.L.C. during the first five months of 2017, which has poisoned the atmosphere for negotiations.  Essentially, the Prepetition Secured Parties want to dictate the parts of the Debtors' business that will be funded with Cash Collateral without regard to the financial health of the entire enterprise.

40.     Although the Debtors entered into the Forbearance Agreement with the Prepetition Secured Parties in February 2017, the Debtors' $7 million cash position continued to deteriorate, as about $5.7 million, was applied to the Senior Secured Debt, with the balance used to fund operations.  As of the beginning of May 2017, the Prepetition Secured Parties indicated that they would only fund payroll and no other operating expenses of the Debtors associated with well P&A.  The Prepetition Secured Parties have  further involved themselves in the minutiae of the Debtors' businesses by dictating, through the disbursement of fudns from blocked bank accounts at Amegy, which invoices, or portions of invoices, that the Debtors could and could not pay with respect to its oil and gas production business.  This has caused a liquidity crises for the Debtors as vendors have progressively ceased to provide needed goods and services.

4820-4533-4336 v5
2909093-000015 06/02/2017

41.     Faced with the inability to obtain disbursements of Cash Collateral from the Prepetition Secured Parties to operate the business of the entire enterprise, the Debtors elected to seek the protection of Chapter 11 bankruptcy.

## RELIEF REQUESTED

42.     The Debtors request the ability to use cash receipts and equivalents constituting the Cash Collateral of the Prepetition Secured Parties. Specifically, the Debtors request entry of the Interim Order, substantially in the form attached hereto as Exhibit A, and, following the Final Hearing, a Final Order,

    (a)    authorizing the use of Cash Collateral, as such term is defined in section 363(a) of the Bankruptcy Code, of the Prepetition Secured Parties, pursuant to section 363(c) of the Bankruptcy Code, on an interim basis and upon the terms and conditions set forth in the Interim Order during the period following the date of commencement of these Chapter 11 Cases and pending the Final Hearing;

    (b)    granting adequate protection to the Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code on account of the Prepetition Secured Parties' interests in the Prepetition Collateral and on account of the Debtors' use of Cash Collateral, and any diminution in value of the prepetition Cash Collateral resulting therefrom;

    (c)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order and the Final Order; and

    (d)    requesting that the Final Hearing be scheduled by the Court no later than 45 days following entry of the Interim Order to consider entry of the Final Order authorizing on a final basis, inter alia, the use of Cash Collateral and the provision of adequate protection of the Prepetition Secured Parties' interests in the prepetition Cash Collateral.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

**A.    The Court Should Authorize the Debtors to Use Cash Collateral and Provide Adequate Protection**

43.     A debtor's use of property of the estate, including cash collateral, is governed by Bankruptcy Code Section 363. Pursuant to Bankruptcy Code section 363(c)(2), a debtor may only use cash collateral subject to the consent of all entities that have an interest in the cash

18

collateral or the grant of adequate protection. 11 U.S.C. § 363(c)(2). Bankruptcy Code Section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

44.     Bankruptcy Code section 361 states:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by−

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that . . . use, sale, or lease under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

45.     Generally, what constitutes adequate protection is decided on a case-by-case basis. *In re First South Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987) (*citing In re Becker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process").

46.     The Debtors propose to provide the Prepetition Secured Parties with adequate protection that includes: (a) granting of Adequate Protection Liens to the Prepetition Secured Parties on post-petition Cash Collateral, all property of the Debtors that was subject to the Prepetition Liens, and the proceeds thereof; and (b) requiring certain budget and reporting obligations.

4820-4533-4336 v5
2909093-000015 06/02/2017

47.     The Debtors submit that with the Adequate Protection Liens, the Prepetition Secured Parties' interest in the Cash Collateral will not diminish, but will in fact increase over the course of these Cases, because the Debtors expect that the proceeds from the Debtors' well services business will greatly exceed the Debtors' current cash on hand.  *See In re Carbone Companies, Inc.*, 395 B.R. 631 (Bankr. N.D. Ohio 2008) (holding that undersecured creditor was adequately protected for the use of cash collateral by debtor-construction company where debtor projected that its cash and receivables would increase over the course of the case and debtor granted creditor replacement lien in such post-petition cash and receivables).

48.     Consistent with the purposes underlying the provision of adequate protection, the proposed Interim Order provides the Prepetition Secured Parties with adequate protection (as set forth in detail above) to protect the Prepetition Secured Parties from any diminution in value of their interests during the pendency of these Chapter 11 Cases.  The Debtors anticipate that, through the use of the Cash Collateral, they will increase the amount of their cash on hand from approximately $2 million to $8.3 million by the end of 2017, and generate further business to reorganize successfully.  Accordingly, because the Cash Collateral will increase in value, the Prepetition Secured Parties are adequately protected with replacement liens in post-petition Cash Collateral and budgetary restraints.

49.     This Court should authorize the Debtors' use of Cash Collateral as the Prepetition Secured Parties are adequately protected under the terms of the proposed Interim Order and Final Order and have consented to the use of Prepetition Collateral and Cash Collateral in accordance with the terms of the Interim Order and Final Order.

20

**B.     The Debtors' Need to Access Cash Collateral**

50.     The Debtors need the Cash Collateral to pay operating expenses associated with their business operations, all in accordance with the Budget (as defined below). Indeed, absent such relief, the Debtors' businesses will be (and to some extent due to the Prepetition Secured Parties' overbearing conduct, already have been) brought to an immediate halt, with damaging consequences for the Debtors, their estates and creditors.     While the Debtors have simultaneously asked the Court for approval to borrower funds post-petition, the amount that the Debtors have been offered will only be sufficient to fund the costs of administering the Debtors' estates,[4] and not the Debtors' working capital or operational costs.

51.     The Debtors' use of Cash Collateral is critical to preserve the value of their assets and property during the Chapter 11 cases and will avoid immediate and irreparable harm to the Debtors' estates and creditors. The use of Cash Collateral constituting proceeds of the Prepetition Collateral generated following the Petition Date will also allow the Debtors to avoid the increased costs and administrative burdens that would follow if the Debtors were required to immediately segregate and not use their operating cash. The terms and conditions on which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of Bankruptcy Code Sections 361 and 363. If the Interim Order is entered, the Debtors will have ample working capital to operate their businesses and provide an opportunity to maximize value for the benefit of their stakeholders. At the same time, the Prepetition Secured Parties will be adequately protected with the Adequate Protection Liens on assets of the Debtors.

52.     As discussed above, a significant portion of the Prepetition Collateral consists of the Debtors' oil and gas properties and related assets (including real property and personal

---

[4] This financing is being provided by Corn Meal LLC, an entity owned and controlled by Chester F. Morrison, Jr., a significant shareholder in Rooster Energy Ltd. and Subordinate secured creditor of the Debtors.

4820-4533-4336 v5
2909093-000015 06/02/2017

property related thereto), which includes the hydrocarbons extracted by the Debtors from those properties and the proceeds generated from sales thereof. The Debtors' business model is predicated upon their ability to exploit their hydrocarbon assets, bring them to market, and use the proceeds in their business operations. Thus, the orderly continuation of the Debtors' operations and the preservation of their going concern value is largely dependent upon their ability to regularly convert the prepetition collateral into Cash Collateral and use it in their operations. The Debtors rely on the Cash Collateral generated from their operations to fund working capital, capital expenditures, research and development efforts, and for other general corporate purposes.

53.     An equally significant portion of the Debtors' operations relates to the work done by Well Services. The Debtors' business model is built on the ability to price and execute various  service contracts including the lucrative work associated with the plugging and abandonment of wells.  These projects typically require significant start-up costs, but generate significant revenue upon the projects' completion.  Like the other Debtors, Well Services relies on the Cash Collateral generated from their operations to fund working capital, capital expenditures and for other general corporate purposes.

54.     The Debtors have prepared a budget showing sources and uses of cash necessary for the  Debtors' operations on a weekly basis for the first 13 weeks of these Chapter 11 cases (as such budget may be modified from time to time by the Debtors, the "Budget"), a copy of which is attached hereto as Exhibit B, including the Debtors' forecasted receipts and disbursements from the Petition Date through July 17, 2017 (such initial six-week period, the "Interim Budget Period").  As set forth in the Interim Order and the Budget, the Debtors intend to use Cash Collateral for, among other things, working capital, general corporate purposes, and

4820-4533-4336 v5
2909093-000015 06/02/2017

administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof.

55.     As set forth in the Interim Order, the Debtors will adhere to the Budget during the Budget Period, subject to their ability to: (i) carry over any amounts not expended for weekly budgeted items not paid through any subsequent week within a four-week period thereafter, (ii) expend up to fifteen percent (15%) more than the budgeted amount (plus any permitted Carry Forward) for a specific week in such week so long as the aggregate expenditures during the Budget Period do not exceed the total shown on the Budget for such interim period by more than fifteen percent (15%) (excluding Excluded Disbursements) payable to the professionals of the Prepetition Secured Parties), and (iii) pay amounts incurred from and after the Petition Date, in addition to or for categories not listed in the Budget with the prior written consent of the Prepetition Agent (collectively, "Authorized Variances").

## C.     The Debtors' Interim Use of Cash Collateral Should be Approved.

56.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use Cash Collateral may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2). Bankruptcy Code Section 363(c)(3) authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [Bankruptcy Code Section 363(e)]." 11 U.S.C. § 363(c)(3).

4820-4533-4336 v5
2909093-000015 06/02/2017

In this case, immediate and irreparable harm would result if the relief requested in the Motion is not granted on an interim basis. Absent use of the Prepetition Collateral, including the Cash Collateral, the Debtors will simply be unable to continue the operation of their business. As such, use of the Prepetition Collateral, including the Cash Collateral, is necessary to the Debtors' ability to preserve and maintain their going-concern value for the benefit of all parties in interest. Failure to grant the relief requested herein on an interim basis would result in immediate and irreparable harm to the Debtors' estates.

57.     Based on the foregoing, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis. Accordingly, the Debtors seek immediate authority to use the Prepetition Collateral and Cash Collateral, pursuant to the terms and conditions in the Interim Order to prevent immediate and irreparable harm to the Debtors' estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

## WAIVER OF BANKRUPTCY RULE 6004

58.     With respect to any aspect of the relief sought herein that constitutes a use of property under Bankruptcy Code Section 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. The Debtors thus submit that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## RESERVATION OF RIGHTS

59.     Except as otherwise set forth herein or in the Interim Order, nothing contained herein is intended or should be construed as an admission as to the validity of any claim against

4820-4533-4336 v5
2909093-000015 06/02/2017

the Debtors, a waiver of the Debtors' or any other party in interest's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code Section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, nor should it be construed as, an admission as to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## NOTICE

60.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Western District of Louisiana; (b) all known or alleged secured creditors; (c) all persons and entities known or reasonably believed to have asserted a lien or other interest in any of the Cash Collateral; (d) counsel to the agent for the Debtors' prepetition secured bank group; (e) counsel to Chet Morrison as agent to the Subordinate lenders; (f) those financial institutions with which the Debtors maintain depository accounts; (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; and (h) the parties included on each Debtors' list of twenty (20) largest unsecured creditors (collectively, the "Initial Notice Parties"). The Debtors submit that, under the circumstances, no other or further notice is required.

61.     In the event the Court enters the Interim Order, the Debtors propose to serve notice of the entry thereof on the Initial Notice Parties and all parties that have filed (prior to such service date) requests for notice pursuant to Bankruptcy Rule 2002. The notice will provide that any objections to the relief granted in the Interim Order must be filed with the Court and served upon counsel for the Debtors no later than twenty-one (21) days after the date this Motion was served upon such objecting party (the "Objection Deadline"). If an objection is timely filed and

4820-4533-4336 v5
2909093-000015 06/02/2017

served prior to the Objection Deadline, such objection will be heard at the Final Hearing on the Motion. If no objections are timely filed and served, the Debtors will file a certification of counsel to that effect, attaching the Final Order.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion on an interim basis, (b) schedule a final hearing on this Motion within thirty (30) days of the Petition Date or as soon as is otherwise practicable thereafter to consider entry of the Final Order, and (c) grant such other and further relief as may be just and proper.

Dated: June 2, 2017

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ**
A Professional Corporation

By: */s/ Jan M. Hayden*
    **Jan M. Hayden**
    Louisiana Bar No. 6672
    **Edward H. Arnold III**
    Louisiana Bar No. 18767
    Federal ID No. 17158
    **Lacey Rochester**
    Louisiana Bar No. 34733
    Federal ID No. 2394748
    201 St. Charles Avenue, Suite 3600
    New Orleans, Louisiana 70170
    Telephone: (504) 566-5200
    Facsimile: (504) 636-4000
    jhayden@bakerdonelson.com

26

4820-4533-4336 v5
2909093-000015 06/02/2017

AND

**Susan C. Mathews**(*pro hac vice* admission pending)
Texas Bar No. 05060650
Federal ID No. 8479
**Daniel J. Ferretti**(*pro hac vice* admission pending)
Texas Bar No. 24096066
Federal ID No. 2741909
1301 McKinney St., Suite 3700
Houston, TX 77010
(713) 650-9700
(713) 650-9701 – Facsimile
smathews@bakerdonelson.com
dferretti@bakerdonelson.com

*Proposed Counsel for the Debtors and Debtors in Possession*

4820-4533-4336 v5
2909093-000015 06/02/2017