## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: § | § | Chapter 11 |
| ROOSTER ENERGY, L.L.C., *et al.*[1] § | § | Case No. 17-50705 |
| Debtors. § | § | (Joint Administration Requested) |
| § | § | (Emergency Hearing Requested) |

### EMERGENCY MOTION FOR INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 364, FED R. BANKR. P. RULE 4001(C) AND L.R. 4001(B) AND (C): (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING RELATED RELIEF, AND (III) SCHEDULING FINAL HEARING

NOW INTO COURT, through undersigned counsel, comes Rooster Energy, L.L.C., Rooster Energy Ltd., Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Probe Resources US Ltd., Cochon Properties, LLC, and Morrison Well Services, LLC (collectively, "Debtors"), debtors and debtors-in-possession in the above-captioned case, who hereby move for entry of an interim order (the "Interim DIP Order") and final order (the "Final DIP Order") pursuant to sections 105(a) and 364 of title 11 of the United States Code, 11 U.S.C. §§ 1011532 (as amended, the "Bankruptcy Code"), and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing and approving, among other things, Debtors' obtaining postpetition financing (the "Postpetition Financing") from Corn Meal, LLC, a Louisiana limited liability company (the "DIP Lender"), on a Section 364(c) secured and

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Rooster Energy, L.L.C. (7323); Rooster Energy Ltd. (9700); Rooster Petroleum, LLC (8665); Rooster Oil & Gas, LLC (8968); Probe Resources US Ltd. (0456); Cochon Properties, LLC (1694); and Morrison Well Services, LLC (9531). The Debtors' service address is 16285 Park Ten Place, Suite 120, Houston, TX 77084.

superpriority administrative claim basis, and (ii) scheduling interim and final hearings with respect to the relief requested herein.

Debtors' ability to obtain the Postpetition Financing is critical to Debtors' ability to continue as a going concern during the course of these Debtors' chapter 11 bankruptcy cases (the "Chapter 11 Cases"). The proceeds of the Postpetition Financing will be used to fund certain costs of administering Debtors' estates, including without limitation, fees assessed by the Office of the United States Trustee and the Clerk of Court and fees and expenses of professionals of the estates, as approved by the Bankruptcy Court.

Pursuant to Bankruptcy Rule 4001(c), the principal provisions of the Interim DIP Order, a proposed copy of which is attached as **Exhibit "1"** hereto, are as follows (capitalized terms used but not immediately defined herein shall have the meanings ascribed to them later in this Motion or in the Interim DIP Order, as the case may be):

- a. **Nature and Amount of Financing**. Pursuant to a credit agreement, substantially in the form of Exhibit 2 attached to this Motion (the "DIP Credit Agreement" and, collectively with any other loan agreement, notes, guaranties, security documents or other agreements or instruments executed by Debtors in connection with the DIP Credit Agreement, the "Loan Documents"), DIP Lender will lend to Debtors, during the Commitment Period, up to $525,000 cash on a secured, administrative priority basis under § 364(b) of the Bankruptcy Code. (**Interim DIP Order** ¶¶13-19).

- b. **Borrowing Limits**. Borrowings under the Postpetition Financing may be made from the Closing Date through the earlier of (i) the date of entry of the 363 Sale Order authorizing the sale by Rooster Energy Ltd. of its ownership interest in Rooster Energy, L.L.C. and Probe Resources US Ltd. (the "Property"), (ii) the second anniversary of the DIP Credit Agreement and (iii) the termination of the commitment period following an event of default under the DIP Credit Agreement (the "Commitment Period") and cannot exceed an aggregate of $525,000, with a maximum amount of $225,000 being available prior to the date of entry of the 506(a) Order. (DIP Credit Agreement § 2(a)).

- c. **Borrowing Conditions**. The initial borrowing under the Postpetition Financing is conditioned upon (i) entry of the Interim DIP Order authorizing the financing on or before June 9, 2017, (ii) DIP Lender's receipt of Debtors' executed DIP Credit

Agreement and related loan documents upon entry of the Interim DIP Order; and (iii) DIP Lender receipt of satisfactory evidence that each Debtor has obtained all required consents and approvals. All borrowings under the Postpetition Financing are conditioned upon (x) no event of default having occurred and continuing under the DIP Credit Agreement, (y) no injunction, writ, restraining order or other order prohibiting, directly or indirectly, the extending of credit under the DIP Credit Agreement, and (z) the Interim Order and Final Order (if issued) being in full force and effect and not having been vacated, reversed, modified or stayed in any respect (and if either such order is the subject of any pending appeal, no performance of any obligation of any party shall have been stayed pending such appeal. (DIP Credit Agreement §§ 4(a) and (b)).

d. **Interest Rate and Origination Fee**. Interest accrues at a fixed rate per annum equal to the applicable federal rate for mid-term loans in effect on the date of the DIP Credit Agreement. (DIP Credit Agreement § 2(f)).

e. **Maturity Date**. Earliest of: (i) the second anniversary of the DIP Credit Agreement, (ii) the date of acceleration of the obligations under the DIP Credit Agreement pursuant to the terms of the DIP Credit Agreement, (iii) closing of the sale by Rooster Energy, Ltd. of the Property pursuant to the Court's entry of a 363 Sale Order, and (iv) the effective date of a plan of reorganization or arrangement in the Chapter 11 Cases. (DIP Credit Agreement §3(a) and definition of "Maturity Date").

f. **Certain Events of Default**. Among other Events of Default under the DIP Credit Agreement, an Event of Default occurs if (i) Debtors fail to timely pay Postpetition Financing obligations, (ii) failure to timely receive any consent or approval of a governmental authority, (iii) the occurrence of an event that has or could reasonably be expected to have, a material adverse effect on the business, assets, operations, prospects or financial or other condition of a Debtor, (iv) the entry of an order amending, supplementing, staying, vacating or otherwise modifying the DIP Credit Agreement, Interim Order or Final Order without the DIP Lender's consent, (v) a chapter 11 trustee or examiner with expanded powers is appointed in any of the Chapter 11 Cases, (vi) any of the Chapter 11 Cases is dismissed or converted to chapter 7 of the Bankruptcy Code, (vii) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay to the detriment of DIP Lender, (viii) the entry of an order in any Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of obligations owed by a Debtor to the DIP Lender, (ix) the Interim DIP Order or the Final DIP Order ceases to be in full force and effect, (x) the filing by any Debtor of any plan of reorganization or arrangement without the prior consent of the DIP Lender, (xi) formation by any Debtor of a new subsidiary and failure to contemporaneously cause such subsidiary to become a borrower under the DIP Credit Agreement, (xii) failure of the Debtors to file a 363 Sale Motion within forty five (45) days of the commencement of the Chapter 11 Cases, in a form approved by the DIP Lender, requesting Bankruptcy Court authorization for

Rooster Energy Ltd. to sell the Property (the "363 Sale Motion") or (xiv) any Debtor conducts its business in a manner that materially deviates from the budget delivered by the Debtors to the DIP Lender. (DIP Credit Agreement §5).

g. **Liens**. Upon the date of entry of each Postpetition Financing Order, the Obligations of the Debtors under the Loan Documents shall be secured by a first priority Lien on all unencumbered assets and property of the Debtors and a junior Lien on all assets and property of the Debtors that are encumbered by Liens as of the date of the Interim DIP Order. (DIP Credit Agreement § 2(h)).

In accordance with Fed. R. Bankr. P. 4001 and LR 4001, Debtors have identified below, by page and paragraph number, the location of each of the following provisions:

| Provision | Contained in Credit Agreement or Proposed Order | Location in Credit Agreement or Proposed Order | Location in Motion |
|---|---|---|---|
| (1) A grant of priority or a lien on property of the estate under § 364(c) or (d). | X Yes<br>☐ No | Credit Agreement, pp 6-7; § 2(g)-(j);<br>Order, pp 8-10, ¶¶ 18-19 | n/a |
| (2) The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim. | ☐ Yes<br>X No | | |
| (3) A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. | ☐ Yes<br>X No | | |
| (4) A waiver or modification of Code provisions or applicable rules relating to the automatic stay. | X Yes<br>☐ No | Order pp 12-13, ¶ 23 | n/a |

| **Provision** | **Contained in Credit Agreement or Proposed Order** | **Location in Credit Agreement or Proposed Order** | **Location in Motion** |
|---|---|---|---|
| (5) A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364. | ☐ Yes<br>X No | | |
| (6) The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. | X Yes<br>☐ No | Credit Agreement, p 12, § 5(f);<br>Order, p 7, ¶ 13(f) | pp 10-11;<br>¶ 14(d) |
| (7) A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. | X Yes<br>☐ No | Credit Agreement, pp 6-7; § 2(h)-(j);<br>Order, pp 9-10, ¶ 19 | **n/a** |
| (8) A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action. | ☐ Yes<br>X No | | |
| (9) The indemnification of any entity. | ☐ Yes<br>X No | | |
| (10) A release, waiver, or limitation of any right under § 506(c). | X Yes<br>☐ No | Credit Agreement p. 9, § 2(k)(v) | **n/a** |
| (11) The granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a). | ☐ Yes<br>X No | | |

In addition to the foregoing relief, Debtors request that the Court:

(i) schedule, pursuant to Bankruptcy Rule 4001 and Local Rule 4001, an interim hearing on this Motion for this Court to consider entry of the Interim DIP Order and the relief set forth therein;

(ii) schedule, through the Interim DIP Order, pursuant to Bankruptcy Rule 4001(c)(2), the final hearing on this Motion (the "**Final Hearing**") on or before July 17, 2017 or forty-five days from entry of the Interim DIP Order to consider entry of the Final DIP Order authorizing borrowings under and approving the terms of the Postpetition Financing on a final basis as set forth herein; and

(iii) approve Debtors' notice procedures with respect to the Final Hearing.

In further support of this Motion, Debtors rely upon and incorporate by reference the *Declaration of Kenneth F. Tamplain, Jr. in Support of First Day Motions* (the "Tamplain Declaration"). In further support of this Motion, Debtors submit the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105(a) and 364, Bankruptcy Rule 4001 and Local Rule 4001.

### II.
### BACKGROUND

2. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the

filing of the Chapter 11 Cases, is set forth in detail in the Tamplain Declaration, which is fully incorporated herein by reference.

3. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108. As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases, and no committee has been appointed.

4. Rooster Energy Ltd. ("Rooster Canada"), a British Columbia, Canada corporation whose stock is publicly traded on the TSX Venture Exchange, is the parent company of the Debtors. Rooster Canada conducts business through its wholly owned subsidiaries, Rooster Energy, L.L.C., Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Probe Resources US Ltd., Cochon Properties, LLC and Morrison Well Services, LLC.

5. Rooster Petroleum, LLC ("Rooster Petroleum") is the designated operator for four of the Oil and Gas Leases (the "Operated Leases"). Of these Operated Leases, Rooster Oil & Gas, LLC ("Rooster Oil") owns a 100% working interest in East Cameron Block 246 (OCS-G-34236), Eugene Island Block 44 (OCS-G-34289), Grand Isle Block 70 (OCS-G-27949), and Vermilion Block 376 (OCS-G-14428) (with the exception of two wells at Vermilion 376, in which it owns 95%). Rooster Petroleum is still recognized as the qualified operator of several other Operated Leases that have expired but having remaining infrastructure that must be removed.

6. Cochon Properties, LLC ("Cochon") is the designated operator and the owner of a 100% working interest in one oil and gas lease located at Vermilion Block 67 (OCS-G-00560). Cochon is still recognized as the qualified operator of one other Operated Lease that is expired but has remaining infrastructure that must be removed.

7. Rooster Oil also owns non-operating working interests in two leases (the "Non-Operated Leases"): a 34% working interest at Ship Shoal Block 79 (OCS-G-15277) and a 16.6% working interest at West Cameron Block 215 (OCS-G-04087) that are producing and operated by third parties.

8. Morrison Well Services, LLC, ("Well Services") provides oil and gas well intervention services the majority of which consists of well plugging and abandonment services ("P&A") in the shallow waters of the Gulf of Mexico with 16 rigless complementary sets of P&A equipment, or "spreads". A spread generally consists of a pump powered by a diesel engine, wireline units, cement blenders, tanks and assorted tools. The combined expertise of the Debtors' oil & gas production and P&A engineers of Well Services allows the Debtors to provide their customers with extensive technical support, exceptional safety performance and high quality customer service. The Debtors' customers include many of the largest operators of wells in the Gulf of Mexico. In addition to its work for third party customers, Well Services is strategic to the Debtors' oil & gas production business, because the Debtors utilize Well Services to evaluate and acquire mature fields with exploitable upside for minimal costs. Through the utilization of Well Services' P&A expertise, the Debtors are able to cost-effectively manage their own asset retirement obligations of the oil and gas operations.

9. As more fully described in the Debtors' Emergency Motion for Entry of Interim and Final Orders (i) Authorizing Postpetition Use of Cash Colateral, (ii) Granting Adequate Protection to Prepetition Secured Parties, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief filed simultaneously with this Motion (the "Cash Collateral Motion"), the Debtors' cash is currently restricted under the direction of the Debtors' prepetition secured lender, Angelo Gordon Energy Services, LLC (the "Prepetition Agent"), as

administrative agent for the first lien noteholders (the "Prepetition Secured Parties"). The Debtors have not succeeded in obtaining the consent of the Prepetition Agent to use cash collateral and thus, as of the Petition Date, has no mechanism for funding the Debtors' chapter 11 administrative expenses.

10. Debtors seek postpetition financing to fund Debtors' chapter 11 administration expenses, including the fees of Debtors' professionals whose services are required to move these cases towards confirmation of a plan of reorganization, (ii) to fund a plan of reorganization, (iii) to provide for the sale of the Property in accordance with the 363 Sale Motion, and (iv) to enable Debtors to successfully emerge from chapter 11 as a financially viable reorganized debtor with sufficient working capital and funding to perform its business operations, pursuant to a confirmed plan of reorganization. These actions will maintain the value of Debtors' assets, and is in the best interests of Debtors and their creditors.

11. If Debtors are unable to obtain Postpetition Financing, they will be unable to fund the chapter 11 administration expenses and reorganize, and thus the value of their estates and of their collateral will be adversely affected. By obtaining Postpetition Financing, Debtors will be able to fund the necessary costs and expenses to reorganize which will increase the value of their estates and of their collateral and maximize payments to creditors.

12. The DIP Lender is willing to provide such financing on a superpriority administrative claim basis and secured basis pursuant to Bankruptcy Code Section 364(c). DIP Lender is requesting a lien on all of Debtors' unencumbered collateral to secure the financing and a junior lien on all assets and properties of Debtors that are encumbered by liens as of the date of the Interim DIP Order. DIP Lender is willing to provide Postpetition Financing to Debtors pursuant to the terms of the DIP Credit Agreement, provided that the Court permits the

DIP Lender's claim to be treated as a superpriority administrative expense under section 364 (c) (1) and 503(b)(1) and allows the liens. As set forth in the DIP Credit Agreement, Debtors currently seek the immediate entry of the Interim DIP Order authorizing Debtors to enter the DIP Credit Agreement and obtain the Postpetition Financing. The willingness of the DIP Lender to provide such financing is conditioned upon the entry of the Interim DIP Order approving this Motion on or before June 9, 2017.

13. Specifically, DIP Lender's claims under the DIP Credit Agreement and any order approving the Motion shall constitute a superpriority administrative expense pursuant to 11 U.S.C. § 364(c) (1) and 503(b)(1) which will have priority over administration expenses pursuant to Sections 503(b) and 507(b).

14. In addition, the other key terms of the proposed Postpetition Financing are as follows:

> (a) Provided that the Interim DIP Order is entered on or before June 9, 2017, there is no Material Adverse Effect and Debtors execute the DIP Credit Agreement and related loan documents, then, DIP Lender will disburse $225,000 of the Postpetition Financing to Debtors.
>
> (b) Upon entry of the Final DIP Order, the 506(a) Order, and the satisfaction of the other conditions under the DIP Credit Agreement, DIP Lender will make available to Debtors an additional $300,000 of the Post Petition Financing.
>
> (c) There will be no debt service payments by Debtors during the Chapter 11 Cases. All interest will be capitalized and added to the principal of the Loans. If a DIP Lender approved 363 Sale Order is entered, then the Postpetition Financing will be paid and satisfied by the issuance to the DIP Lender of new equity in the reorganized debtor. If such an order is not entered, then the Revolving Loans will become due and payable.
>
> (d) No later than forty-five (45) days from the commencement of the Chapter 11 Cases, Debtors shall file a 363 Sale Motion of

the Property ("363 Sale Motion") in a form approved by the DIP Lender.

In light of the foregoing, it is essential that the Interim DIP Order be entered on or before June 9, 2017 or Debtors will not meet a condition for the financing.

## III.
## LEGAL ARGUMENT

**Debtors Have Satisfied the Legal Requirements for Approval of the DIP Credit Facility.**

**1. Debtors Cannot Obtain Financing on Terms More Favorable than Those of the DIP Credit Facility.**

Bankruptcy Code section 364 states that a debtor in possession that is authorized to operate its business may obtain financing either in the ordinary course of business or outside the ordinary course of business. First, Bankruptcy Code section 364(a) allows the debtor to obtain unsecured credit and to incur unsecured debt in the ordinary course of business. 11 U. S.C. § 364(a). Second, after notice and a hearing, the Court may authorize a debtor in possession to obtain unsecured credit or incur unsecured debt outside the ordinary course of business allowable as an administration expense under Bankruptcy Code section 503(b)(1). 11 U.S.C. § 364(b).

If the debtor in possession is unable to obtain unsecured credit on this basis, Bankruptcy Code section 364(c) allows the Court, after notice and a hearing, to authorize the debtor in possession to obtain credit or to incur debt that has priority over administrative expenses under Bankruptcy Code section 503(b)(1), that is secured by a lien on unencumbered estate property, or that is secured by a junior lien on encumbered estate property. 11 U.S.C. §§ 364(c)(1),(2) and (3).

Other than the requirement of notice and a hearing, the only statutory prerequisite under Bankruptcy Code section 364(c) for obtaining credit on a secured basis and superpriority basis is that the debtor in possession must be unable to obtain unsecured credit allowable as an

administrative expense under section 503(b)(1). 11 U.S.C. § 364(c)(2); *see also, In re Garland Corp.*, 6 B.R. 456, 461 n. 11 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

The Bankruptcy Code offers a debtor-in-possession additional flexibility to the extent that it needs to borrow additional funds. Bankruptcy Code Section 364 provides a progression of various protections to induce a postpetition lender to extend credit to a debtor-in-possession. *In re Sun Runner Marine, Inc.*, 945 F.2d 1089, 1092-93 (9th Cir. 1991). These include administrative priority, super-priority and secured status. 11 U.S.C. § 364. In addition, parties who extend credit are protected under § 364(e) from the effects of a reversal on appeal of the authorization to incur debt as long as they have acted in good faith.

To demonstrate that the requisite credit is not obtainable on an unsecured basis, the debtor need only demonstrate "by good faith effort that credit was not available" without the protections afforded to potential lenders by section 364(c) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Say. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id. at 1088; see also *In re Ames*, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the two remaining lenders); *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."). Where few lenders

are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd *sub nom., Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989).

Most of Debtors' assets are encumbered by liens in excess of what Debtors estimate the value of those assets are. Such liens also encumber the production of the Properties which, pursuant to existing cash collateral or custodian orders entered by this Court, may only be used for the operating expenses of the Properties. Accordingly, there are no available funds from which chapter 11 administration expenses and postpetition debt service payments can be made. Under such circumstances, stand-alone postpetition financing on an unsecured basis simply to fund chapter 11 operations during the case would be virtually impossible to obtain. It is highly unlikely that a lender would make a loan for which no debt service payments can be made during the case unless there is other consideration for the making of such a loan.

Debtors therefore had to search for a lender willing to provide both DIP postpetition financing to fund chapter 11 operations and expenses during the case, as well as "emergence" or "exit" financing to support confirmation of a reorganization plan providing for a restructuring of existing debt.

Prior to the Petition Dates, Debtors' financial advisor embarked on the process of search for such funding. Debtors and their financial advisors firmly believe that, under the circumstances of these cases, the proposed Postpetition Financing is the best option available to the Debtors.

B. **Debtors' Decision to Enter into the DIP Credit Facility Is Supported by Sound Business Judgment.**

Courts generally give broad deference to the business decisions of a debtor. *See, e.g., In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corporation*,

722 F.2d 1063, 1070 (2d Cir. 1983); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987). In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a third party rather than the bankruptcy estate. *See, e.g., In re Trans World Airlines, Inc.,* 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment ..., [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"). This was explained by the bankruptcy court in *In re Ames Department Stores, Inc.*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990):

> [A] court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.

*Id.* at 40.

Here, Debtors' decision to enter into the Postpetition Financing represents a reasonable exercise of business judgment. Debtors, have *de minimis* cash and an extensive amount of work to be performed by their professionals which must commence immediately in order to pursue confirmation of a plan of reorganization. Thus, absent the financing to be provided under the DIP Credit Facility, Debtors will not be able to meet their chapter 11 operating and administrative obligations. Put another way, Debtors would be forced to cease operations and abandon the chance to reorganize and successfully emerge from Chapter 11 unless they have the funds to pay the costs which must be incurred immediately. The success of these Chapter 11 Cases therefore turns on Debtors' ability continue operations and implement their long-term strategy of

restructuring. The Postpetition Financing will permit Debtors to accomplish these goals, and achieve their stated objective of maximizing value for all constituencies.

C.  **The Terms of the DIP Credit Facility are Reasonable under the Circumstances and Should Be Approved.**

The terms of the DIP Credit Facility are similar to those often included in complex financing arrangements. Indeed, the DIP Credit Agreement and the Interim DIP Order reflect the give and take that result from complex financing negotiations. Courts have recognized that a debtor often must make significant concessions in exchange for financing. *See, e.g., In re Ellingsen MacLean Oil Co.*, 65 B.R. 358, 365 (Bankr. W.D. Mich. 1986), aff'd, 834 F.2d 599 (6th Cir. 1987) (chapter 11 postpetition financing is "fraught with dangers for creditors . . ."). Accordingly, courts recognize that a debtor may need to "enter into a hard bargain with a creditor in order to acquire the needed funds to complete reorganization." *Id.* at 365.

Similarly, lenders often agree to subordinate or "carve-out" from their collateral funds to pay professionals. *See Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re Blackwood Assocs., L.P.),* 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised that if professionals really want to be paid they had best insist upon a "real carve out"); *In re Ames*, 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve adversary system).

D.  **The Court Should Schedule Interim and Final Hearings on This Motion Pursuant To Bankruptcy Rule 4001(c)(2).**

Bankruptcy Rule 4001(c)(2) provides that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code Section 364 may be commenced not earlier than fourteen (14) days after service of the motion and Local Rule 4001(b)(2) requires that a final hearing may not take place on less than twenty one day's notice. Upon request, however, the Bankruptcy Court is

empowered to conduct an expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

Pursuant to Bankruptcy Rule 4001(c)(2), Debtors request the Court conduct an expedited interim hearing on the Motion (the "Interim Hearing") and, after the entry of the Interim DIP Order, allow Debtors to enter the DIP Credit Agreement by the required deadline, borrow funds in accordance therewith, and, at the Final Hearing, to allow Debtors to borrow under the Postpetition Financing on a final basis.

Debtors have an urgent and immediate need for cash to fund chapter 11 administration expenses and operations. Debtors have been unable to obtain financing on terms more favorable than presented herein, although they have attempted to do so. Absent entry of an Interim DIP Order on or before June 9, 2017 and ability to borrow the $525,000 thereunder, Debtors' efforts to confirm a plan and restructure their businesses, will likely falter. Under the circumstances, the granting of the relief requested by the Motion is warranted.

Debtors respectfully submit that, given Debtors' immediate need to enter the Postpetition Financing, expedited notice as contemplated by Bankruptcy Rule 4001 is sufficient to permit this Court to approve, on an interim basis, Debtors' request for approval of Postpetition Financing. Debtors will provide notice by electronic mail, U.S. mail or the Court's ECF noticing of the Interim Hearing to: (a) DIP Lender, (b) the Office of the United States Trustee for the Western District of Louisiana; (c) Debtors' known twenty largest unsecured creditors; (d) all other secured creditors, and all other parties requesting notice pursuant to Bankruptcy Rule 2002.

In light of the foregoing, and pursuant to Bankruptcy Rule 4001(c)(2), Debtors request that the Court schedule the Final Hearing on this Motion on or before the Omnibus Hearing Date

of April 20, 2011, and that the Court authorize Debtors to enter into the DIP Credit Facility on a final basis at such hearing.

## NOTICE

Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Western District of Louisiana; (b) all known or alleged secured creditors; (c) all persons and entities known or reasonably believed to have asserted a lien or other interest in any of the Cash Collateral; (d) counsel to the agent for the Debtors' prepetition secured bank group; (e) counsel to Chet Morrison as agent to the subordinated lenders; (f) those financial institutions with which the Debtors maintain depository accounts; (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; and (h) the parties included on each Debtors' list of twenty (20) largest unsecured creditors (collectively, the "Initial Notice Parties"). The Debtors submit that, under the circumstances, no other or further notice is required.

In the event the Court enters the Interim Order, the Debtors propose to serve notice of the entry thereof on the Initial Notice Parties and all parties that have filed (prior to such service date) requests for notice pursuant to Bankruptcy Rule 2002. The notice will provide that any objections to the relief granted in the Interim Order must be filed with the Court and served upon counsel for the Debtors no later than twenty-one (21) days after the date this Motion was served upon such objecting party (the "Objection Deadline"). If an objection is timely filed and served prior to the Objection Deadline, such objection will be heard at the Final Hearing on the Motion. If no objections are timely filed and served, the Debtors will file a certification of counsel to that effect, attaching the Final Order.

# CONCLUSION

Based upon all the foregoing, as set forth in this Memorandum, the Motion, the Tamplain Declaration, and all other papers, documents, or other evidence submitted in support of the Motion, Debtors respectfully request that the Court grant the Motion in its entirety and: (1) approve the DIP Credit Facility on an interim basis; (2) enter the Interim DIP Order, in substantially the form attached hereto as Exhibit 1; (3) authorize Debtors to borrow on an interim basis under the terms of the Loan Documents and the Interim DIP Order, pending a final hearing on this Motion; (4) grant the DIP Lender the security, liens and superpriority claims provided for under the Interim DIP Order; (5) schedule a final hearing on this Motion; and (6) grant to Debtors such other relief as the Court deems necessary and appropriate.

Dated: June 2, 2017          Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ**
A Professional Corporation

By: */s/ Lacey E. Rochester*_____
   **Jan M. Hayden**
    Louisiana Bar No. 6672
   **Edward H. Arnold III**
   Louisiana Bar No. 18767
   Federal ID No. 17158
   **Lacey E. Rochester**
   Louisiana Bar No. 34733
   Federal ID No. 2394748
   201 St. Charles Avenue, Suite 3600
   New Orleans, Louisiana 70170
   Telephone: (504) 566-5200
   Facsimile: (504) 636-4000
   jhayden@bakerdonelson.com

   AND

   **Susan C. Mathews**(*pro hac vice* admission pending)
   Texas Bar No. 05060650

Federal ID No. 8479
**Daniel J. Ferretti**(*pro hac vice* admission pending)
Texas Bar No. 24096066
Federal ID No. 2741909
1301 McKinney St., Suite 3700
Houston, TX 77010
(713) 650-9700
(713) 650-9701 – Facsimile
smathews@bakerdonelson.com
dferretti@bakerdonelson.com

*Proposed Counsel for the Debtors and Debtors in Possession*