# DIP CREDIT AGREEMENT

This **DIP CREDIT AGREEMENT** (this "Agreement"), dated as of June [   ], 2017, is entered into by and between Rooster Energy, Ltd., formed under the laws of British Columbia, as debtor-in-possession, Rooster Energy, L.L.C., a Louisiana limited liability company, as debtor-in-possession, Rooster Oil & Gas, LLC, a Delaware limited liability company, as debtor-in-possession, Rooster Petroleum, LLC, a Delaware limited liability company, as debtor-in-possession, Probe Resources US Ltd., a Nevada corporation, as debtor-in-possession, Cochon Properties, LLC, a Louisiana limited liability company, as debtor-in-possession, Morrison Well Services, LLC, as debtor-in-possession (each a "Borrower" and collectively, "Borrowers"), and Corn Meal, LLC, a Louisiana limited liability company ("Lender").

## W I T N E S S E T H:

**WHEREAS**, on June 2, 2017 (the "Petition Date"), Borrowers commenced Chapter 11 Case No. _____ (the "Chapter 11 Case") by filing a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Western District of Louisiana (Lafayette Division) (the "Bankruptcy Court"). Borrowers continue to operate their business and manage their property as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, Borrowers have requested that Lender provide a secured revolving credit facility to Borrowers in an aggregate amount not to exceed Five Hundred Twenty-Five Thousand Dollars ($525,000.00), excluding interest, fees and charges, pursuant to Section 364(c)(1), (c)(2), (c)(3) and (d) of the Bankruptcy Code for such purposes as are hereinafter described in this Agreement;

**WHEREAS**, to provide security for, and to assure the repayment of the Obligations (as hereinafter defined), Borrowers have agreed to provide to Lender Liens (as defined below) upon the Collateral (as hereinafter defined) as set forth herein and in accordance with Section 364(c)(1), (c)(2), (c)(3) and (d) of the Bankruptcy Code and the other Loan Documents; and

**WHEREAS**, Lender is willing to make the Loans (as defined below) to Borrowers, subject to the terms and conditions set forth in the Agreement.

**NOW, THEREFORE,** in consideration of the foregoing recitals, and of the mutual covenants, conditions and provisions hereinafter set forth, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrowers hereby agree as follows:

1. <u>Definitions</u>. As used in this Agreement, and in addition to terms defined elsewhere herein, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"363 Sale Motion" shall mean a 363 Sale Motion filed in the Chapter 11 Case requesting Bankruptcy Court authorization for Rooster Energy Ltd. to sell the Assets.

"363 Sale Order" means the order of the Bankruptcy Court approving the sale of the Assets pursuant to Section 363 of the Bankruptcy Code pursuant to the 363 Sale Motion.

"Applicable Federal Rate" shall mean the mid-term "applicable federal rate" as defined in Section 1274(d) of the Internal Revenue Code of 1986, as amended, in effect for loans made on the date of this Agreement.

"Assets" shall be the membership interests of Rooster Energy, L.L.C., a Delaware limited liability company, and Probe Resources US Ltd., a Nevada corporation.

"Bankruptcy Expenses" means (a) quarterly fees due the Office of the U.S. Trustee and (b) Professional Fees.

"Budget" shall mean the monthly budget delivered by Borrowers, which reflects on a line-item basis Borrowers' anticipated cumulative cash receipts and expenditures on a monthly basis in order to fund Borrowers' operations in such manner so as to maintain the Assets in order to sell the Assets pursuant to a 363 Sale Order and to pay Bankruptcy Expenses approved by Lender.

"Business Day" shall mean any day other than a Saturday, Sunday or a public or bank holiday or the equivalent for banks generally under the laws of state of Louisiana.

"Carve-Out Amount" means $_____, less any prepetition retainers paid by Borrower.

"Collateral" shall have the meaning assigned to such term in the Financing Orders.

"Commitment Period" means the period of time beginning on the date hereof and ending on the earlier of: (i) the date of a 363 Sale Order with respect to the sale of the Assets, (ii) the Maturity Date or (iii) the termination of the Commitment Period pursuant to Section 6 hereof.

"Cure Amounts" means all (a) cure costs required to be paid and all defaults required to be cured as a condition to assumption and assignment of any contracts pursuant to Section 365 of Bankruptcy Code and (b) all contingent, unliquidated or unmatured liabilities under such contracts or under any subcontracts related thereto arising prior to the date hereof.

"Final Order" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Bankruptcy Court which order shall be satisfactory in form and substance to Lender (including such additional provisions not present in the Interim Order as Lender shall require), and from which no appeal or motion to reconsider has been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied (unless Lender waives such requirement), together with all extensions, modifications and amendments thereto, which,

among other matters but not by way of limitation, authorizes Borrowers to obtain credit, incur (or guarantee) debt, and grant Liens under this Agreement and provides for the super priority of Lender's claim with respect to amounts borrowed hereunder, subject to permitted Liens, priority Professional Fees, not to exceed the Carve-Out Amount, and fees of the US Trustee and Clerk of the Court.

"Financing Order" means, the Interim Order or the Final Order, whichever is in effect at the time of any determination hereunder, and "Financing Orders" means the Interim Order and the Final Order, collectively.

"Governmental Authority" means any nation or government, any state, city, province or other political subdivision thereof, and any agency, department or other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Interim Order" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing (assuming satisfaction of the standards prescribed in Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law), together with all extension, modifications, and amendments thereto, in form and substance satisfactory to Lender, which, among other matters but not by way of limitation, authorizes, on an interim basis, Borrowers to execute and perform under the terms of this Agreement and provides for the super priority of Lender's claim with respect to amounts borrowed hereunder pursuant to Section 364(c)(i) of the Bankruptcy Code, subject to permitted Liens, priority Professional Fees, not to exceed the Carve-Out Amount, and fees of the US Trustee and Clerk of the Court.

"Lien" means any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement in the nature of a security interest of any kind or nature whatsoever.

"Loan" and "Loans" shall have the meanings ascribed to said terms in Section 2(a) hereof.

"Loan Documents" means this Agreement, any agreements, documents or filings that Lender reasonably may request to perfect or continue to perfect Lender's Liens on the Collateral and any other agreement entered into, now or in the future, in connection with this Agreement.

"Maturity Date" means the earliest of (a) the second anniversary hereof; provided that said date may be extended for up to three additional 30 day periods at the sole discretion of Lender, (b) the date of acceleration of the Obligations of Borrower hereunder pursuant to Section 6, (c) the date of the closing of the sale of the Assets pursuant to Section 363 of the Bankruptcy Code or a confirmed plan of reorganization, and (d) the effective date of a plan of reorganization or arrangement in the Chapter 11 Case.

"Maximum Amount" means Five Hundred Twenty-Five Thousand Dollars ($525,000.00).

"Note" shall have the meaning ascribed to such term in Section 2(b) hereof.

"Obligations" means all unpaid principal of and accrued and unpaid interest on the Loans and all other expenses, reimbursements, indemnities and other obligations of Borrowers to Lender hereunder.

"Person" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or Governmental Authority.

"Professional Fees" means attorneys' fees and expenses of Borrowers' counsel and any counsel for an official committee of creditors, in an amount not to exceed the aggregate amount of the Carve-Out Amount, including those fees and expenses paid post-petition.

"Property" means any kind of property or asset and any interest therein, whether real, personal or mixed, tangible or intangible, including, with respect to each Borrower, all stock, membership interests or other ownership interests in any entity owned by it.

2. Revolving Facility.

(a) Loans. Subject to the terms and conditions of this Agreement, including, without limitation, Section 2(d), during the Commitment Period, Lender (i) shall make loans for the purposes of paying Bankruptcy Expenses approved by Lender and (ii) may, in its sole discretion, make additional loans to Borrowers from time to time prior to the Maturity Date (each a "Loan" and collectively, the "Loans"); provided, that (x) after giving effect to any such Loan the aggregate principal amount of Loans outstanding under this Agreement shall not exceed the Maximum Amount and (y) no more than $225,000 may be borrowed prior to the entry of an order in the Chapter 11 Case under Section 506(a) of the Bankruptcy Code. Borrowers may borrow, repay, and reborrow amounts hereunder in accordance with the terms hereof.

(b) Budget. Borrowers shall provide Lender with a Budget for each calendar month no later than two (2) Business Days prior to the end of the prior month. Together with the monthly Budget, Borrowers shall also provide Lender with (a) a line-item variance report and an aggregate variance report for the preceding month that compares actual cash receipts and expenditures to the amounts projected in the preceding monthly Budget and (b) a cumulative report that shows actual cash receipts and expenditures from the Petition Date to the report date, all in a form and scope reasonably acceptable to Lender. Prior to the occurrence of an Event of Default, Borrowers may pay the aggregate allowed amount of all unpaid Bankruptcy Expenses incurred, accrued or invoiced from Petition Date until an Event of Default; provided, that all such Bankruptcy Expenses to the extent allowed shall be paid pursuant to any applicable interim compensation procedures established in an order of the Bankruptcy Court and shall be subject to final allowance by order of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code. Lender shall not be responsible for

the direct payment or reimbursement of any Bankruptcy Expenses incurred in connection with the Chapter 11 Case under any chapter of the Bankruptcy Code, and nothing in this Agreement shall be construed to obligate Lender in any way to pay Bankruptcy Expenses or any other liability of Borrowers whatsoever, or to ensure that Borrowers have sufficient funds to pay such Bankruptcy Expenses or liabilities.

(c) <u>Note</u>. The Loans made by Lender to Borrowers hereunder, if any, shall be evidenced by one or more promissory notes of Borrowers, substantially in the form of <u>Exhibit A</u> attached hereto and made a part hereof, with appropriate insertions, payable to the order of Lender and in a principal amount equal to the Maximum Amount (as amended, endorsed, renewed, extended, or otherwise modified from time to time, the "<u>Note</u>"). Lender is hereby authorized to record the date and amount of each Loan made by it to Borrowers, if any, and the date and amount of each payment or prepayment of principal thereof by Borrowers, and such recordation may be evidenced by Lender's internal records, and any such recordation shall constitute <u>prima facie</u> evidence of the accuracy of the information so recorded, <u>provided</u> that the failure to make any such recordation or any error in such recordation shall not affect Borrowers' obligations hereunder or under the Note executed by Borrowers.

(d) <u>Borrowing Requests</u>. Borrowers may from time to time request a Loan under <u>Section 2(a)</u> by providing Lender with a borrowing request in writing (or as otherwise agreed between Borrowers and Lender) specifying (i) the amount of the requested Loan, (ii) the requested date thereof, which shall be a Business Day, and (iii) the intended use of the Loan's proceeds. If Lender elects, in its discretion, to make the Loan, Lender will make such Loan to Borrowers by wire transfer in accordance with the instructions provided by Borrowers (or as otherwise agreed between Borrowers and Lender), or, if Lender desires, Lender may fund the Loan proceeds directly to the obligee of the expenses identified by Borrowers as being paid with the Loan..

(e) <u>Limitation on Use of Loans, Collateral and Bankruptcy Expenses</u>. Notwithstanding anything herein to the contrary, no Loans, Collateral or the Professional Fees may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Agreement, the Liens or claims granted to Lender under the Financing Orders or this Agreement, (ii) assert any action for preferences, fraudulent conveyances, other avoidance power claims, subordination or any other any claims, counterclaims or causes of action, objections, contests or defenses against Lender or its affiliates or their respective agents, affiliates, representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay Lender's enforcement or realization on its Collateral in accordance with the Loan Documents or Financing Orders, (iv) seek to modify any of the rights granted to Lender under the Loan Documents or the Financing Orders, (v) pay any Cure Amounts, (vi) pay any expenses other than Bankruptcy Expenses except as otherwise approved by the Lender, or (vii) pay or fund any retainer or similar amount to any professional, finder, broker or banker, in each of the foregoing cases without Lender's prior written consent; provided that, this Section 2(e) shall not

prevent (x) the payment by the Borrowers of any such costs and expenses with funds that do not constitute proceeds of the Loans or (y) the payment of Professional Fees included in the Budget using proceeds of the Loans, so long as such Professional Fees are not used for the purposes set forth in this Section 2(e).

(f) <u>Interest</u>. Each Loan evidenced by this Agreement shall bear interest from the respective date of borrowing until the date of repayment by maturity, acceleration or otherwise. Interest shall accrue on the principal balance of each Loan from time to time outstanding hereunder at the per annum rate equal to the Applicable Federal Rate. Borrowers shall pay interest in cash on each such Loan in arrears on the Maturity Date, and, if the Maturity Date is extended by Lender, on each day that is 30 days thereafter, up to and including the new Maturity Date. In addition, on any partial or complete payment or prepayment of principal of the Loans, Borrowers shall pay the accrued and unpaid interest on any portion of the Loans so paid or prepaid. Lender may require the payment in cash of accrued interest on demand or at regular intervals in its discretion. In no event shall the interest rate under this <u>Section 2(f)</u> exceed the maximum rate permitted under applicable law.

(g) <u>Superpriority Claims</u>. Pursuant to Section 364(c)(1) of the Bankruptcy Code, all of the Obligations shall constitute allowed superpriority claims within the meaning of the Bankruptcy Code against each Borrower with priority over any and all administrative expenses, including any diminution claim or adequate protection obligation, and all other claims against each Borrower, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, 1114 or any other provision of the Bankruptcy Code (the "<u>Superpriority Claims</u>"), whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition Property of each Borrower and all proceeds thereof, subject only to the payment of the Bankruptcy Expenses to the extent specifically provided for herein.

(h) <u>Lender's Liens</u>. Each Borrower hereby grants to Lender a security interest and continuing Lien on all right, title, and interest of each Borrower in and to all currently existing and hereafter acquired or arising Property in order to secure prompt repayment of the Obligations and in order to secure prompt performance by each Borrower of each of its covenants and duties under the Loan Documents, including without limitation, the following said Liens that shall be effective and perfected upon the date the Bankruptcy Court so orders (all such Liens granted to Lender together with any Liens granted in any other Loan Documents, the "<u>Lender's Liens</u>"): (i) pursuant to Sections 364(c)(2) of the Bankruptcy Code, a valid, fully-perfected first priority senior Liens upon all the Property, whether existing on the Petition Date or thereafter acquired, that is not otherwise subject to a Lien; (ii) pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, fully-perfected security interests in and

Liens upon all the Property, whether existing on the Petition Date or thereafter acquired, which Liens shall be only subject to valid, perfected and unavoidable Liens in existence immediately prior to the Petition Date or valid and unavoidable Liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code; (iii) pursuant to Section 363(d) of the Bankruptcy Code, Lender's Liens shall not be subject or subordinate to (A) any Lien that is avoided and preserved for the benefit of Borrowers and their estates under Section 55l of the Bankruptcy Code, or (B) any Liens arising after the Petition Date, including any Liens granted in favor of any federal, state, local or other Governmental Authority for any liability of any Borrower; and (iv) a Lien upon all Property over which a Lien can be granted pursuant to the Uniform Commercial Code as in effect in the State of Louisiana; <u>provided, however</u>, the Lender's Liens shall not include Borrowers' claims and causes of action under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code, or any proceeds or property recovered therefrom.

(i) <u>Delivery of Additional Documentation Required</u>. At any time upon the request of Lender, each Borrower shall, execute and deliver to Lender all financing statements, trademark filings, copyright filings, collateral assignments, continuation financing statements, fixture filings, security agreements, pledges, assignments, mortgages, leasehold mortgages, ship mortgages, deeds of trust, leasehold deeds of trust, endorsements of certificates of title, applications for title, affidavits, reports, notices, schedules of accounts, letters of authority, and all other documents that Lender reasonably may request, in form satisfactory to Lender, to perfect and continue the perfection of Lender's Liens on the Collateral (whether now owned or hereafter arising or acquired) or to give notice of perfection of Lender's Liens on the Collateral, and in order to consummate fully all of the transactions contemplated hereby or under the other Loan Documents or the Financing Orders.

(j) <u>Perfection of Lender's Liens</u>. Lender's Liens shall be effective and considered perfected upon the date of the Interim Order. Notwithstanding Section 362(a) of the Bankruptcy Code, the Interim Order shall authorize, but not require, Lender to execute, file or record or cause any Borrower to execute, file or record, as appropriate, any financing statements, trademark filings, copyright filings, collateral assignments, continuation financing statements, fixture filings, security agreements, pledges, assignments, mortgages, leasehold mortgages, ship mortgages, deeds of trust, leasehold deeds of trust, endorsements of certificates of title, applications for title, affidavits, reports, notices, schedules of accounts, letters of authority, and any other documents that Lender may reasonably request to perfect and continue the perfection of Lender's Liens or take any other action in order to validate and perfect Lender's Liens. Whether or not Lender shall, in its sole discretion, choose to file any such instruments or otherwise confirm perfection of Lender's Liens, Lender's Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order. Upon the request of Lender, each Borrower shall execute, deliver, file and record such instruments to enable Lender to further validate, perfect, preserve and

enforce Lender's Liens. A certified copy of the Interim Order may, in the discretion of Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order for filing and recording.

(k) <u>Preservation of Rights Granted Under the Financing Orders</u>. The Financing Orders shall contain terms and conditions acceptable to Lender, including but not limited to the following:

    (i) No claim or Lien having a priority superior to or pari passu with those granted to Lender shall be granted or allowed while any portion of the Loan (or any refinancing thereof) or the commitments thereunder or the Obligations remain outstanding, whether under Section 364(d) of the Bankruptcy Code or otherwise.

    (ii) Unless all Obligations shall have been paid in full in cash and this Agreement shall have been terminated, no Borrower shall seek, and it shall constitute an Event of Default (in addition to any other Event of Default contained in the other Loan Documents) if any Borrower seeks, or if there is entered, (A) any modifications or extensions of the Financing Orders without the prior written consent of Lender, and no such consent shall be implied by any other action, inaction or acquiescence by Lender, or (B) an order dismissing the Chapter 11 Case.

    (iii) Except as expressly provided in the Financing Orders or in this Agreement, Lender's Liens and the Superpriority Claims and all other rights and remedies of Lender granted by the provisions of this Agreement shall survive, and shall not be modified, impaired or discharged by the entry of an order converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Case, or by any other act or omission, nor shall Lender's Liens or the Superpriority Claims or any of the other rights and remedies of the Lender granted by the provisions of this Agreement be modified, impaired or discharged by the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, each Borrower has waived any discharge as to any remaining Obligations and such waiver is hereby approved.

    (iv) The terms and provisions of this Agreement shall continue in the Chapter 11 Case, or in any superseding Chapter 7 case under the Bankruptcy Code, and Lender's Liens, the Superpriority Claims and all other rights and remedies of Lender granted by the

{JX262312.7}8

17-50705 - #19-2  File 06/02/17  Enter 06/02/17 22:25:33  Exhibit 2 - Credit Agreement  Pg 8 of 18

provisions of this Agreement shall continue in full force and effect until the Obligations are indefeasibly paid in full.

    (v)  Lender, the Collateral and the Liens granted to Lender hereunder shall not be subject to any charge or claim under Section 506(c) of the Bankruptcy Code or any similar provisions of the Bankruptcy Code or applicable law.

  (l)  <u>Power of Attorney</u>.  Each Borrower hereby irrevocably makes, constitutes, and appoints Lender (and any of Lender's officers, employees, or agents designated by Lender) as such Borrower's true and lawful attorney, with power to, if such Borrower refuses to, or fails timely to execute and deliver any of the documents described in Section 2(i), sign the name of such Borrower on any of the documents described in Section 2(i).  The appointment of Lender as each Borrower's attorney, and each and every one of Lender's rights and powers, being coupled with an interest, is irrevocable until all of the Obligations have been fully and finally repaid and performed and Lender's obligations to extend credit hereunder are terminated.

  (m)  <u>Right to Inspect</u>.  Lender (through any of its officers, employees, contractors, representatives or agents) shall have the right, from time to time hereafter to inspect the business books, files and records and to check, test, audit and appraise the Collateral in order to verify the financial condition of the business and the Borrowers, and the amount, quality, value, condition of, or any other matter relating to, the business or the Collateral, and to interview Borrowers' employees in connection therewith.

  (n)  Each of the Borrowers is jointly and severally liable, *in solido* to Lender for all of the Obligations.

3.  <u>Payment</u>.

  (a)  <u>Payment at Maturity</u>.  All Loans shall be repaid by Borrowers on the Maturity Date together with any accrued and unpaid interest on the principal being repaid on the Maturity Date.

  (b)  <u>Method of Payment</u>.  All payments hereunder, including without limitation all payments of principal of and interest on the Loans, shall be made to Lender at its address referred to in <u>Section 7(a)</u> (or as otherwise agreed between Borrowers and Lender) in immediately available funds.  Whenever any payment hereunder becomes due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in the computation of the interest due.  Any payment made to Lender shall be applied in the following order: first, to the payment of any expenses owing to Lender; second, to the payment of interest on the Loans; third, to the payment of the principal amount of the Loans outstanding; and fourth, to any other amounts owing to Lender hereunder.

4. Conditions Precedent.

(a) Agreement. This Agreement shall become effective as of the date first above written upon satisfaction of each of the following:

(i) Agreement. This Agreement or counterparts hereof shall have been duly executed by, and delivered to, Borrowers and Lender.

(ii) Approvals. Lender shall have received satisfactory evidence that each Borrower has obtained all required consents and approvals of all Persons, including all requisite Governmental Authorities, to the execution, delivery and performance of this Agreement.

(iii) Interim Order. Entry by the Bankruptcy Court of the Interim Order by no later than June 9, 2017 in form and substance satisfactory to Lender.

(b) Loans. The following shall be conditions precedent to any Loans made under this Agreement:

(i) No Event of Default. No Event of Default shall have occurred and be continuing on the date of such Loan, nor shall any result from the making thereof.

(ii) No Injunction, etc. No injunction, writ, restraining order, or other order of any nature prohibiting, directly or indirectly, the extending of such credit shall have been issued and remain in force by any Governmental Authority against any Borrower or Lender.

(iii) Financing Orders in Effect. The Interim Order or the Final Order (unless a Loan is made prior to the entry of the Final Order) shall be in full force and effect and shall not have been vacated, reversed, modified, or stayed in any respect (and if such Financing Order is the subject of any pending appeal, no performance of any obligation of any party hereto shall have been stayed pending such appeal).

5. Events of Default. Each of the following events shall be referred to herein as an "Event of Default":

(a) failure to make any payment of any installment of principal of or interest upon any Loan when due and payable after the expiration of 3 Business Days after written notice of such default from Lender to Borrowers is delivered to Borrowers; or

(b) either Lender or any Borrower shall have failed to receive, as and when required, any consent or approval from any Governmental Authority necessary in order

for such party to perform its obligations hereunder in accordance with all applicable laws, rules and regulations; or

(c) any event occurs that has, or could reasonably be expected to have, a material adverse effect on the business, assets, operations, prospects or financial or other condition of any Borrower; or

(d) the occurrence of any of the following in the Chapter 11 Case:

(i) the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Agreement or the Interim Order or the Final Order without the written consent of Lender (other than the replacement of the Interim Order with the Final Order);

(ii) the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of a responsible person or an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of any Borrower;

(iii) the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;

(iv) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a Lien on any Collateral, (B) to permit the perfection of any Lien on the Collateral unless such Lien is or shall be junior in priority to the Lender's Liens therein (other than Liens equal to or senior to the Lender's Liens under and in accordance with the Financing Order) or (C) to allow any creditor to terminate an executory contract or unexpired lease of any Borrower;

(v) the entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement;

(vi) the entry of an order in the Chapter 11 Case granting any other super priority administrative claim or Lien equal or superior to that granted to Lender (other than claims and Liens equal to or senior to the claims and Lender's Liens under and in accordance with the Financing Order);

(vii) the Financing Order ceases to be in full force and effect;

(viii) the filing by any Borrower of any plan of reorganization or arrangement without the prior consent of Lender; or

(ix) should any Borrower seek any of the foregoing; or

{JX262312.7}11

(e) any Borrower forms any new subsidiary without causing such new subsidiary, contemporaneously with the formation thereof, to join this Agreement as a Borrower hereunder by executing a joinder to this Agreement in form satisfactory to the Lender; or

(f) failure of the Debtors to file a 363 Sale Motion within forty five (45) days of the commencement of the Chapter 11 Cases, in a form approved by Lender, requesting Bankruptcy Court authorization for Rooster Energy Ltd. to sell the Assets; or

(g) any Borrower conducts its business in a manner that materially deviates from the Budget.

6. Remedies.

(a) Certain Action Following a Default. If any Event of Default shall occur, then in each and every such case, Lender may, in its sole discretion, by notice in writing to Borrowers (with copies to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case and the Office of the United States Trustee; provided, however, that failure to deliver such copies shall not in any way affect the validity or effectiveness of such notice): (i) declare all or any part of the unpaid balance of the Loans then outstanding to be immediately due and payable, (ii) terminate the Commitment Period; and (iii) subject to such limitations, if any, set forth in the Financing Order, exercise any rights and remedies of Lender under this Agreement or any other document executed in connection with this Agreement or applicable law, including, without limitation, all rights under the applicable Uniform Commercial Code.

(b) Cumulative Remedies. To the extent not prohibited by applicable law which cannot be waived, all of Lender's rights hereunder and under any other document between Lender and any Borrower shall be cumulative.

(c) Waivers. To the extent that such waiver is not prohibited by the provisions of applicable law that cannot be waived, each Borrower hereby waives (1) all presentments, demands for performance, notices of nonperformance (except to the extent required by this Agreement), protests, notices of protest and notices of dishonor; (2) any requirement of diligence or promptness on the part of Lender in the enforcement of its rights under this Agreement; (3) any and all notices of every kind and description which may be required to be given by any statute or rule of law; and (4) any defense (other than indefeasible payment in full) which it may now or hereafter have with respect to its liability under this Agreement.

7. Miscellaneous.

(a) Notices. Any communication, notice or demand required or permitted to be given hereunder shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopier at the address or telecopier number set forth in Schedule I hereto. Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been

given when received; notices sent by telecopier shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next business day for the recipient).

(b) <u>Entire Agreement; Severability</u>. This Agreement sets forth the parties' entire agreement and understanding in respect of the subject matter contained herein. Notwithstanding the foregoing, however, the Financing Order shall continue to govern the terms and conditions of the transactions contemplated hereby to the extent inconsistent with, or address matters not addressed in, this Agreement. If any term or provision hereof, or its application to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such terms to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby and each term hereof shall be valid and enforceable to the fullest extent permitted by applicable law.

(c) <u>Assignment</u>. Neither this Agreement nor any of the rights, interests or obligations of any Borrower hereunder shall be assigned or otherwise transferred by any Borrower, nor may any Borrower delegate performance hereunder, except with Lender's prior written consent. Lender may assign this Agreement to any of its subsidiaries or to its or their successors or survivors without Borrowers' prior consent.

(d) <u>Amendments; Waivers</u>. All amendments, supplements or other modifications hereof must be made by written agreement of the parties hereto.

(e) <u>APPLICABLE LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF LOUISIANA. EACH PARTY HERETO HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN ANY BORROWER AND LENDER PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT; <u>PROVIDED</u>, THAT LENDER AND BORROWERS ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT; <u>PROVIDED FURTHER</u>, THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER.

(f) <u>WAIVER OF VENUE</u>. EACH BORROWER IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING

ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY COURT REFERRED TO IN SECTION 7(e). EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(g) SERVICE OF PROCESS. EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 7(a). NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW.

(h) WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

(i) Counterparts. This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. A facsimile copy of a signature hereto shall have the same effect as the original of such signature.

(j) Reinstatement. In the event that any payment hereunder, or any part thereof, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(k) Binding Agreement. This Agreement and all Liens created hereby or pursuant hereto shall be binding upon each Borrower, the estate of each Borrower, and any trustee or successor in interest of any Borrower in the Chapter 11 Case or any subsequent case commenced under Chapter 7 of the Bankruptcy Code. This Agreement shall be binding upon, and inure to the benefit of, the successors of Lender and its assigns, transferees and endorsees. The Liens created by this Agreement and the Financing Orders shall be and remain valid and perfected in the event of the substantive consolidation or conversion of the Chapter 11 Case or any other bankruptcy case of any Borrower to a case under Chapter 7 of the Bankruptcy Code or in the event of dismissal of the Chapter 11 Case or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that Lenders file financing statements or otherwise perfect its security interests or Liens under applicable law.

**IN WITNESS WHEREOF,** the parties have caused this Dip Credit Agreement to be duly executed as of the date first above written.

BORROWERS:

Rooster Energy Ltd.

By: _____
Name:
Title:

Rooster Energy, L.L.C.

By: _____
Name:
Title:

Rooster Oil & Gas, LLC

By: _____
Name:
Title:

Rooster Petroleum, LLC

By: _____
Name:
Title:

Probe Resources US Ltd.

By: _____
Name:
Title:

Cochon Properties, LLC

By: _____
Name:
Title:

Morrison Well Services, LLC

By: _____
Name:
Title:

<u>LENDER</u>:

Corn Meal, LLC  
By: _____  
Name:  
Title:

{JX262312.7}16

17-50705 - #19-2  File 06/02/17  Enter 06/02/17 22:25:33  Exhibit 2 - Credit Agreement Pg 16 of 18

## SCHEDULE I

### Notice Information

| Borrower | Lender |
|---|---|
| [_____] | Corn Meal, LLC |
| [_____] | 9 Bayou Dularge Road |
| [_____] | Houma, Louisiana 70363 |
| [_____] | Attn: Manager |
| | Telecopier: [_____] |

with a copy to:

[_____]                                with a copy to:
[_____]
[_____]                                J. Marshall Page, III
[_____]                                Jones Walker LLP
                                              201 St. Charles Ave.
                                              50th Floor
                                              New Orleans, Louisiana 70170
                                              Telecopier: 504-589-8248

{JX262312.7}                                  17

EXHIBIT A

Form of Note