# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| In re: | § §  § Case No. 17-50705 § § |
| **ROOSTER ENERGY, L.L.C.,** *et al.*[1] | § § § Chapter 11 § § |
| Debtors. | § § |

## ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION TO DEBTORS' REQUESTED FIRST DAY RELIEF

Angelo, Gordon Energy Servicer, LLC, as administrative agent and collateral agent (in such capacities, the "<u>Administrative Agent</u>"), on behalf of itself and the holders (the "<u>Holders</u>") of secured notes (the "<u>Notes</u>") issued pursuant to the Note Purchase Agreement, dated as of November 17, 2014 and amended and restated as of June 25, 2015 (as subsequently amended, restated, or otherwise modified from time to time, the "<u>Note Purchase Agreement</u>"), files this preliminary omnibus objection (the "<u>Objection</u>") requesting that this Court deny certain relief requested by the Debtors in their first day motions. In support thereof, the Administrative Agent respectfully submits the following:

## PRELIMINARY STATEMENT & BACKGROUND

1. The Debtors seek relief that is well beyond what is necessary to prevent immediate and irreparable harm in a surprise chapter 11 case with minimal notice and without any non-insider creditor support. While the Holders thought that they were negotiating a pre-

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Rooster Energy, L.L.C. (7323); Rooster Energy Ltd. (9700); Rooster Petroleum, LLC (8665); Rooster Oil & Gas, LLC (8968); Probe Resources US Ltd. (0456); Cochon Properties, LLC (1694); and Morrison Well Services, LLC (9531). The Debtors' service address is 16285 Park Ten Place, Suite 120, Houston, TX 77084.

**ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION**
**TO DEBTORS' REQUESTED FIRST DAY RELIEF**

arranged chapter 11 case with the Debtors to be filed in the next few weeks, the Debtors filed bankruptcy with no advance warning and no advance preview of pleadings or proposed forms of orders with its largest creditor constituent. In fact, several hours before the filing the Holders, at the request of the Debtors, consented to the payment of prepetition cash collateral that included prospective payroll totaling approximately $1.1 million without the Debtors even mentioning they were planning to file for bankruptcy a few hours later.[2]

2. These cases were not filed until after close of business on Friday and key pleadings were not filed until almost mid-night. The first day hearings were set for 1:30 p.m. on Monday. Thus, the Administrative Agent and the Holders have had effectively less than one business day to review voluminous pleadings and prepare for a potential contested hearing. Additionally, it appears from the docket that only minimal notice to other creditors was provided despite the Debtors' request for significant and immediate relief.

3. This chapter 11 case is a thinly veiled attempt to, *inter alia*, (a) siphon value from collateral of the Administrative Agent and the Holders in order to offset personal plugging-and-abandonment liability of the Debtors' primary insider, (b) use a surprise filing to try to obtain authority to use cash collateral of the Debtors' discrete estates on a substantively consolidated basis without the Administrative Agent's consent in a manner that is not supported by existing law, and (c) impose an illusory DIP financing that benefits only the Debtors' principal insider in an effort to control the course of the chapter 11 cases.

4. The Debtors consist of seven (7) separate entities, each of whom is jointly and severally liable for the indebtedness under the Note Purchase Agreement. Two of these entities,

---

[2] Counsel to the Administrative Agent was subsequently advised that many of these payments were not made. The Administrative Agent does not at this time consent to the payment of any such amounts that have not cleared the Debtors' bank accounts prior to the filing of the bankruptcy petitions (other than for payroll) and reserves all rights in connection with the same.

**ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION**
**TO DEBTORS' REQUESTED FIRST DAY RELIEF**

*Page 2 of 13*

US 5022585v.6

17-50705 - #24  File 06/05/17  Enter 06/05/17 10:16:01  Main Document  Pg 2 of 13

Rooster Petroleum LLC and Rooster Oil and Gas LLC (collectively, the "Rooster Entities"), face continuing diminution to their estates and no reasonable likelihood of rehabilitation.[3] The Debtors' own budget provided to undersigned counsel over the weekend establishes the scope of the dissipation (counsel will provide the Court with a demonstrative showing this).

5. Two other entities, Cochon Properties, LLC ("Cochon") and Morrison Well Services, LLC ("MWS"), could well have a successful chapter 11 restructuring if the Debtors chose to seek to restructure these entities without tying them to a restructuring of the diminishing Rooster Entities.[4] The Administrative Agent and the Holders are fully supportive of a consensual reorganization of Cochon and MWS and intend to press forward expeditiously to achieve that result (also, see recitation in paragraph 8 below regarding the willingness of the Administrative Agent and the Holders to discuss a consensual structure for DIP financing).

6. The Rooster Entities own numerous end-of-life properties with no reasonable likelihood of rehabilitation: they have millions of dollars of plugging-and-abandonment liabilities and little revenue to support them. The plugging-and-abandonment liabilities owed by the Rooster Entities, combined with the absence of revenue sources likely prevent any prospect of a successful reorganization of these entities. The chairman of the board and largest equity owner of the parent Debtor Rooster Energy Ltd., Chester F. Morrison, Jr. ("Morrison"), has, through a combination of personal guaranties and guaranties by his affiliated non-Debtor

---

[3] The Administrative Agent has perfected first priority liens in all property of the Debtors including the property of the Rooster Entities. The primary property of the Rooster Entities are certain operated end of life oil and gas properties and a receivable in the amount of approximately $2 million payable for certain third party decommissioning work.

[4] The remaining entities are Rooster Energy Ltd ("Rooster Parent"), Rooster Energy L.L.C. ("Rooster LLC") and Probe Resources US Ltd ("Probe"). Rooster Parent is a public holding company whose primary asset is its equity interest in certain of the other Debtors and certain cash collateral held in its concentration bank account with Amegy Bank in Houston, Texas. Rooster LLC is an intermediate holding company that provides management services to the other Debtors. Probe is non-operational and its primary asset is amounts payable from one of its bonding companies.

**ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION**
**TO DEBTORS' REQUESTED FIRST DAY RELIEF**

company, Chet Morrison Contractors ("CMC") provided in favor of certain bonding companies who issued surety bonds related to the Rooster Entities' oil and gas properties, guaranties of $14.6 million of the Rooster Entities' plugging-and-abandonment obligations.

7. In an improper attempt to control these chapter 11 cases, Morrison proposes to provide a *de minimis* DIP loan of up to $525,000 through his entity, Corn Meal, LLC, of which approximately $213,000 has been already advanced prepetition and for which he is not entitled to DIP loan treatment under any reading of the Bankruptcy Code or applicable law. *See Declaration of Kenneth F. Tamplain, Jr., Chief Executive Officer and President of Rooster Energy Ltd., in Support of Chapter 11 Petitions and First Day Motions*, ¶ 90. In exchange for a mere incremental $312,000 of post-petition financing to be used for an undetermined purpose, Morrison seeks to gain extraordinary relief and bootstrap leverage over the cases on the first day of the bankruptcy cases to the detriment of all creditors, including the Holders.

8. This is unjustified and inappropriate given that the Debtors' own budget projects no DIP borrowings from Morrison during the pendency of these cases. This proposed DIP lending facility fails to meet even a business judgment standard, much less the immediate and irreparable harm standard applicable to first day relief. Nevertheless, were the Debtors to establish that they required postpetition financing to avoid immediate and irreparable harm and that such financing would not represent funding into a non-recoverable loss situation, the Administrative Agent and Holders would welcome the opportunity to negotiate the extension of such financing on a consensual basis with the Debtors. In fact, the Debtors never requested of the Administrative Agent and Holders that they consider funding a DIP facility.

9. A motion for such a DIP loan should be denied on its face, and in any event should not be granted on an interim basis as there has been insufficient notice, no ability of the

Administrative Agent to take discovery, and insufficient time to prepare a full evidentiary hearing to demonstrate the impropriety of the proposed DIP loan. The extra time is also needed because "[I]nsider transactions are subject to heavy scrutiny in bankruptcy court." *In re Texas Std. Oil Co.*, 2008 Bankr. LEXIS 3576 (Bankr. S.D. Tex. 2008); *see also In re Holloway,* 955 F.2d 1008, 1010-11 (5th Cir. 1992).

10. This conflicted DIP motion is coupled with a request by the Debtors' to use the Administrative Agent's and the Holders' cash collateral on a substantively consolidated basis among the Debtors without the secured lenders' consent and without regard to the differences between the Debtors' legal entities and estates.

11. The indebtedness owed under the Notes (the "Note Claims") is secured by a first priority and properly perfected lien on and security interest in substantially all property of the Debtors. The Administrative Agent's and the Holders' collateral is diminishing as a result of producing properties, potential damage to MWS as a result of the pendency of its bankruptcy case, and the Debtors' insistence on using assets of Cochon and MWS for the benefit of the Rooster Entities. The Debtors have no material unencumbered assets with which to adequately protect the Administrative Agent and the Holders, and the Debtors' projected postpetition revenues are collateral for the Note Claims under Bankruptcy Code § 552. The Debtors have taken the position that Administrative Agent and the Holders are undersecured yet have made no attempt to maximize value for their primary creditor constituent.

12. Prior to the Petition Date, the Administrative Agent and the Holders have provided numerous concessions to the Debtors. As admitted by the Debtors in their pleadings, the Debtors were in default for a significant period pre-filing, and the Administrative Agent and the Holders refrained from exercising remedies as they negotiated towards a consensual

restructuring. Notwithstanding the ability to exercise remedies (including a cash sweep), the Administrative Agent and the Holders have routinely consented to payment of payroll and other expenses. However, the Administrative Agent and the Holders do not consent to cash of Cochon or MWS being used to subsidize Morrison's personal obligations nor to funding of the Debtors' professionals to pursue non-consensual chapter 11 cases where the Debtors seek to obtain the same result. The Administrative Agent and the Holders further object to the Debtors' attempt to seek to use cash collateral in these cases on a consolidated basis among the Debtors' estates without regard to the separateness of the Debtor entities and without the Administrative Agent's consent and to its detriment.

### OBJECTIONS TO CERTAIN RELIEF REQUESTED

13. The Debtors' first day pleadings ask for improper relief in a many respects. A few examples include (a) seeking DIP superpriority status for prepetition advances made by Morrison to the Debtors' professionals, (b) the Debtors seeking to impose an unlimited collateral carve-out without the Administrative Agent's consent, and (c) failing to respect the separateness of individual Debtor entities by proposing a consolidated cash-collateral budget without the Administrative Agent's consent.

14. As a threshold matter, the Debtors are required to prove "immediate and irreparable harm" with respect to the first day relief they seek. *See* Bankruptcy Rules 4001 and 6003. In first day motions: (1) relief should be limited to what is minimally necessary to maintain the existence of the debtor; (2) orders should be clear and simple; (3) orders should not change the procedural and substantive protections of the Bankruptcy Code and rules; and (4) no first-day order should violate or disregard anyone's substantive rights in ways not expressly

authorized by the Bankruptcy Code. *In re Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005).

15. The Debtors have made vague and non-specific assertions of immediate and irreparable harm, but they must meet their burden of proof on this issue with specificity with respect to each motion, each expenditure, and each individual Debtor's estate. The conclusory allegations made in the pleadings are insufficient for the Debtors to meet their burden of proof.

16. The Administrative Agent and the Holders object to any of the first day pleadings being granted on a non-interim basis, and reserve all rights to assert additional objections and supplement the below objections. The Administrative Agent and the Holders additionally object to the Debtors' first day pleadings as set forth below.

***Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Post-Petition Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Doc. 14]***

- The Debtors have not shown immediate and irreparable harm for any expenses other than insurance and payroll during the first two weeks of the cases.[5]

- The Debtors have not met their burden to show that the Administrative Agent and the Holders are adequately protected. The Debtors propose to only grant adequate protection liens on property upon which the Administrative Agent and the Holders already have a lien. The Debtors then take the position that the Administrative Agent and the Holders are undersecured. The Debtors must identify specific unencumbered assets to show adequate protection, which they cannot do because no such assets exist. A replacement lien in the decommissioning revenues does not constitute adequate protection because

---

[5] The Administrative Agent received additional detail on the budget late Sunday afternoon and intends to work with the Debtors' financial advisor to come up with a framework to address the payment of additional amounts under a consensual interim cash collateral order. Pending that resolution, all rights are reserved.

**ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION**
**TO DEBTORS' REQUESTED FIRST DAY RELIEF**

such revenues are already fully encumbered prepetition collateral of the Administrative Agent and the Holders.

- The Debtors should not be permitted any budget variances or carry forwards from the budgeted amounts, especially during the brief interim period. Permitting the Debtors to exceed the budget removes the Holders' protection that the Debtor will abide by the budget and is inconsistent with the immediate and irreparable harm standard.

- The Court should not grant a carve-out from the Administrative Agent's and Holders' collateral for the professional fees of the Debtors or any committee without the consent of such secured parties. Such non-consensual relief is not provided for in the Bankruptcy Code or under applicable law. Indeed, such relief would be a taking of the Administrative Agent's and Holders' property interests (their security interests in collateral) without compensation which is impermissible under applicable law.

- The 45-day period for interim use of cash collateral is too long and is not consistent with the immediate and irreparable harm standard. The interim cash collateral order should expire after 14 days to be consistent with Bankruptcy Rule 4001(b)(2).

- The budget should be revised to set forth receipts and expenditures on a Debtor by Debtor basis. The Debtors should not be permitted to use cash collateral among the Debtors' estates on a substantively consolidated basis absent the consent of the Administrative Agent.

- It is inappropriate to include a line item for "Pre-Petition Vendors" in the budget because prepetition creditors should not be paid in this procedural context. Additional detail for post-petition vendors should also be provided so that parties can determine if these are in

fact post-petition claims and if there will be any immediate and irreparable harm if such vendors are not paid.

- The line item for "Other" should be eliminated as it is unclear what this line item encompasses.

***Emergency Motion for Interim and Final Order Pursuant to 11 U.S.C. §§ 105, 364, Fed R. Bankr. P. Rule 4001(C) and L.R. 4001(B) and (C): (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Granting Related Relief, and (III) Scheduling Final Hearing*** [Doc. 19]

- Postpetition financing should not be approved on an interim basis because there is no threat of immediate and irreparable harm without the DIP loan. This is because the Debtors' proposed budget shows that they do not need the post-petition financing at all, much less that there will be immediate and irreparable harm without it.

- As discussed above, prepetition contributions from insiders to the Debtors' professionals cannot be given superpriority DIP status. Bankruptcy Code § 364 refers to the trustee or debtor-in-possession obtaining credit and granting security with Bankruptcy Court approval only after "notice and a hearing." Such status cannot be granted to the prepetition advances because no trustee or debtor-in-possession existed when this advance was made prior to the Petition Date.[6]

- Nunc pro tunc approval of postpetition financing is not provided for under Bankruptcy Code § 364 and in any event is not appropriate where there have been no post-petition advances, and indeed, the postpetition financing is not even needed according to the Debtors' proposed budget.

---

[6] Indeed, the Debtors proposed DIP Credit Agreement has a condition precedent to any loans under the DIP Credit Agreement that the interim financing order be in effect. Proposed DIP Credit Agreement, ¶ 4(b)(iii). The fact that the prepetition advance of funds for professionals' retainers does not even meet the requirements of the Debtors' own proposed credit agreement evidences the fact that this is an equity contribution rather than any type of lending arrangement.

**ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION**
**TO DEBTORS' REQUESTED FIRST DAY RELIEF**

*Page 9 of 13*

US 5022585v.6

17-50705 - #24  File 06/05/17  Enter 06/05/17 10:16:01  Main Document  Pg 9 of 13

- An insider of the Debtors should not be permitted to improperly take control of the Debtors by providing equity contributions disguised as DIP financing. The proposed DIP Credit Agreement makes it an event of default for the Debtors to file any plan of reorganization without the prior consent of the DIP lender. Additionally, the DIP lender attempts to force a 363 sale of certain of the debtor entities or their assets. The DIP lender's efforts to exert insider control on the outcome of the Debtors' bankruptcy cases and to direct the sale of certain of their assets in exchange for a nominal DIP should not be countenanced by the Court.

- The Debtors do not have any unencumbered cash to repay postpetition financing obligations. Because the Debtors have no cash to repay the DIP loan, the DIP loan would not be beneficial to the Debtors' estates. The possibility that the DIP lender might credit bid the DIP loan in a sale is insufficient to overcome this issue because creditors have no assurance that such transaction would be beneficial to the Debtors' estates. Creditors could be forced to choose between an insider sale transaction or a conflicted insider DIP lender deciding to block a value maximizing exit to chapter 11. Further, there are events of default that could accelerate the DIP loan that include filing of a plan of reorganization that is not acceptable to the DIP lender or failing to file a sale motion that is approved by the DIP lender, creating a risk of a DIP loan that might not be able to be repaid.

- Any DIP lien or superpriority claim granted should be expressly subordinated to any adequate protection lien or adequate protection claim granted to the Administrative Agent and the Holders under the cash collateral order.

***Debtors' Emergency Motion for the Entry of Interim and Final Orders (I) Restraining Utility Companies from Discontinuing, Altering, or Refusing Service, (II) Deeming Utility Companies Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Assurance of Payment*** [Doc. 9]

**ADMINISTRATIVE AGENT'S PRELIMINARY OMNIBUS OBJECTION
TO DEBTORS' REQUESTED FIRST DAY RELIEF**

*Page 10 of 13*

US 5022585v.6

17-50705 - #24  File 06/05/17  Enter 06/05/17 10:16:01  Main Document  Pg 10 of 13

- The Debtors should not be permitted to pay prepetition amounts owed to utility companies. The automatic stay prevents any such utilities from exercising remedies, and therefore there is no immediate and irreparable harm if the utilities are not paid their prepetition claims.

***Debtors' Emergency Motion for Entry of an Order Authorizing the Debtors to Pay Certain Prepetition Taxes and Make Payments Under Insurance Premium Finance Agreements [Doc. 10]***

- There is no immediate and irreparable harm for failing to pay taxes until a final hearing because the automatic stay stops taxing authorities from pursuing collection actions.

- There is no valid business reason to pay taxes for the Rooster Entities because these entities have no reorganization prospects. Taxing authorities of the Rooster Entities should not get preferential treatment to other unsecured creditors and should instead be paid pursuant to the ordinary waterfall as part of liquidating the Rooster Entities.

- The proposed order on this motion should provide that the relief is subject to any order regarding use of cash collateral.

***Debtors' Emergency Motion for Entry of an Order Authorizing the Debtors to (I) Maintain and Use Existing Bank Accounts, Cash Management System, and Business Forms, (II) Honor Certain Prepetition Obligations Related Thereto, and (III) Continue to Perform Ordinary Course Intercompany Transactions [Doc. 11];***

- The Debtors should not be permitted to make intercompany transfers or enter into intercompany transactions without the Administrative Agent's consent. Since some of the Debtor entities are administratively insolvent, creditors could be prejudiced by intercompany transfers or transactions between entities that are subsequently converted to chapter 7.

- The Debtors should not be authorized to open or close bank accounts without the Administrative Agent's consent or further order of the court. Such relief is not immediate or necessary on the first day of the case.

***Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtors to Pay, in the Ordinary Course of Business, (I) Royalty Payments, (II) Working Interest Disbursements, and (III) Certain Other Lease Obligations [Doc. 13]***

- There is not an immediate and irreparable harm to the Debtors if Debtors wait until a final order for the Court to consider this relief. The Debtors' budget shows "Oil & Gas Revenue Disbursements" would not need to be paid until week ending July 2, 2017. This is ample time for a final hearing.

- There is no reason to pay prepetition joint interest billings or operating expense payments to third party trade vendors for prepetition payables. Such parties are blocked from taking action by the automatic stay, and therefore there is not an immediate and irreparable harm if they are not paid.

- The Debtors should not be permitted to pay delay rental payments, lease extension payments, shut-in royalty payments, or minimum royalty payments without the Administrative Agent's prior consent. This relief is not necessary as the Debtors state that they believe that they do not owe any of these payments.

## PRAYER

**WHEREFORE**, the Administrative Agent respectfully requests that this Court deny the Debtors' requested first day relief as set forth hereinabove. The Administrative Agent further requests such other and further relief to which it is justly entitled.

Dated: June 5, 2017

Respectfully submitted,

*/s/ Louis M. Phillips*
Louis M. Phillips (#10505)
**KELLY HART & PITRE**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

And

Paul E. Heath, SBT #09355050
Bradley R. Foxman, SBT # 24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214.220.7976
Fax:  214.220.7976
pheath@velaw.com; bfoxman@velaw.com

**COUNSEL FOR ANGELO, GORDON ENERGY SERVICER, LLC**