IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | Chapter 11 |
| ROOSTER ENERGY, L.L.C., *et al.*[1] | § § | Case No. 17-50705 |
| Debtors. | § § § | (Jointly Administered) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING THE DEBTORS TO PAY PRE-PETITION OBLIGATIONS DUE TO CERTAIN CRITICAL VENDORS**

NOW INTO COURT, through undersigned counsel, comes Rooster Energy, L.L.C., Rooster Energy Ltd., Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Probe Resources US Ltd., Cochon Properties, LLC, and Morrison Well Services, LLC (collectively, "Debtors"), who hereby move (the "Motion") for entry of an order, substantially in the form attached hereto, authorizing, but not directing, the Debtors, in the ordinary course of their businesses, to pay pre-petition obligations due to certain critical vendors set forth on **Exhibit 1** attached hereto, as the same may be supplemented as provided herein (the "Critical Vendors"). In support of the Motion, the Debtors rely on the *Declaration of Kenneth F. Tamplain, Jr. in Support of First Day Motions* (the "First Day Declaration"), filed with the Court on the Petition Date, and the *Supplemental Declaration of Kenneth F. Tamplain, Jr. in Support of Critical Vendor Motion* to be filed in this case (the "Supplemental Declaration" and together with the First Day Declaration, collectively, the "Tamplain Declarations"), and respectfully represent as follows:

**JURISDICTION AND VENUE**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Rooster Energy, L.L.C. (7323); Rooster Energy Ltd. (9700); Rooster Petroleum, LLC (8665); Rooster Oil & Gas, LLC (8968); Probe Resources US Ltd. (0456); Cochon Properties, LLC (1694); and Morrison Well Services, LLC (9531). The Debtors' service address is 16285 Park Ten Place, Suite 120, Houston, TX 77084

1

1.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  The Court possesses the requisite authority to grant the relief requested herein pursuant to Sections 105, 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and such relief is warranted under Bankruptcy Rule 6003 and 6004 and Bankruptcy Local Rule 9013-1.

## BACKGROUND

2.      On June 2, 2017 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases.  The factual background of the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 cases, is set forth in the First Day Declaration, concurrently filed with the Court on the Petition Date and fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases, and no committee has yet been appointed.

## FACTS REGARDING CRITICAL VENDORS

4.      Rooster Energy Ltd. ("Rooster Canada"), a British Columbia, Canada corporation whose stock is publicly traded on the TSX Venture Exchange, is the parent company of the Debtors.  Rooster Canada conducts business through its wholly owned subsidiaries, Rooster Energy, L.L.C., Rooster Petroleum, LLC, Rooster Oil & Gas, LLC, Probe Resources US Ltd., Cochon Properties, LLC and Morrison Well Services, LLC.

5. Rooster Petroleum, LLC ("Rooster Petroleum") is the designated operator for four of the Oil and Gas Leases (the "Operated Leases"). Of these Operated Leases, Rooster Oil & Gas, LLC ("Rooster Oil") owns a 100% working interest in East Cameron Block 246 (OCS-G-34236), Eugene Island Block 44 (OCS-G-34289), Grand Isle Block 70 (OCS-G-27949), and Vermilion Block 376 (OCS-G-14428) (with the exception of two wells at Vermilion 376, in which it owns 95%). Rooster Petroleum is still recognized as the qualified operator of several other Operated Leases that have expired but having remaining infrastructure that must be removed.

6. Cochon Properties, LLC ("Cochon") is the designated operator and the owner of a 100% working interest in one oil and gas lease located at Vermilion Block 67 (OCS-G-00560). Cochon is still recognized as the qualified operator of one other Operated Lease that is expired but has remaining infrastructure that must be removed.

7. Rooster Oil also owns non-operating working interests in two leases (the "Non-Operated Leases"): a 34% working interest at Ship Shoal Block 79 (OCS-G-15277) and a 16.6% working interest at West Cameron Block 215 (OCS-G-04087) that are producing and operated by third parties.

8. Morrison Well Services, LLC ("Well Services") provides oil and gas well intervention services the majority of which consists of well plugging and abandonment services ("P&A") in the shallow waters of the Gulf of Mexico with 16 rigless complementary sets of P&A equipment, or "spreads". A spread generally consists of a pump powered by a diesel engine, wireline units, cement blenders, tanks and assorted tools. The combined expertise of the Debtors' oil & gas production and P&A engineers of Well Services allows the Debtors to provide its customers with extensive technical support, exceptional safety performance and high

3

quality customer service. The Debtors' customers include many of the largest operators of wells in the Gulf of Mexico.

9. As oil and gas production companies, Rooster Petroleum, Rooster Oil, and Cochon rely on several contractors to provide services to maintain the Debtors' properties. As discussed in the Supplemental Declaration, the Critical Vendors are necessary to the Debtors' operations since without them, the Debtors cannot operate their wells.

10. Similarly, Well Services has decommissioning contracts, in particular, a contract to plug and abandon wells at Eugene Island Block 18, that should generate $14 million in gross revenue, and approximately $7 million in profit before year end. In order to guarantee that work on their decommissioning contracts are completed this year, Well Services must commence work in the coming weeks to avoid potential weather-related disruptions during the height of hurricane season in the fall. However, in order to commence work, the Debtors must engage certain vendors, including the Critical Vendors, to provide goods and services on behalf of the Debtors.

11. As discussed in the Supplemental Declaration, these Critical Vendors are companies for which the Debtors have no other alternative source for the goods and services these Critical Vendors provide.

12. As a result of the Debtors' liquidity crisis, more fully described in the Tamplain Declarations, the Debtors were not able to remain current on invoices from the Critical Vendors; as a result, the Critical Vendors ceased doing work for the Debtors and effectively shut down Well Services' operations. While the Debtors will continue to attempt to negotiate with the Critical Vendors to continue working with the Debtors on the assurance that the Debtors will be able to compensate them for post-petition work, the Debtors believe it is likely that the Critical Vendors will refuse to do business with the Debtors absent payment of their pre-petition claims.

4
4835-5318-5098 v4
2909093-000015 06/16/2017

## RELIEF REQUESTED

13. By this Motion, the Debtors request authority to pay pre-petition obligations due to the Critical Vendors as reflected on Exhibit 1, as the same may be supplemented as described herein, in the total amount of $658,890.02 (the "Obligations"). The Debtors further request that the Court authorize and direct ZB, N.A. d/b/a Amegy Bank ("Amegy"), the Debtors' depository bank, to honor any payments so authorized.

14. The administrative agent for the Debtors' prepetition secured lenders, Angelo Gordon Energy Services, LLC (the "Prepetition Agent") has consented to use of cash collateral for the three vendors identified on the schedule attached hereto. The Debtors and the Prepetition Agent are discussing whether additional vendors will be determined to be critical, and if there is such an agreement the Debtors will file a supplement to the exhibit attached hereto prior to the hearing.

## BASIS FOR RELIEF

15. The Court has authority to authorize the Debtors to pay the Obligations under Sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *In re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (reiterating the court's own statement in a prior ruling that "[i]n the Third Circuit the law is clear that to justify payment

of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business"); *In re Sharon Steel Corp.,* 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993); *In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

16.     Furthermore, under Bankruptcy Code Section 363(b), this Court may also authorize the Debtors to pay the Obligations. Under Section 363(b), "The [debtor in possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have recognized that the satisfaction of pre-petition debt of critical vendors is a use of property other than in the ordinary course under §363(b)(1). *In re Tropical Sportswear Intl. Corp.*, 320 B.R. 15, 16 (Bankr. M.D.Fla. 2005) (quoting *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004). Similar relief has been granted in this district and other districts. See *In re Harvest Oil & Gas, LLC*, No. 09-50397 (Bankr. W.D.La. 2009); *In re Louisiana Riverboat Gaming Partnership, et al.,* No. 08-10824 (Bankr. W.D.La. 2008); *In re Pelts & Skins, L.L.C., et al.*, No. 06-10742 (Bankr. E.D.La. 2006).

17.     Courts in the Fifth Circuit require that the debtor in possession merely "show that a sound business purpose" justifies the proposed use of property. *See, e.g., Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.");

*see also In re Crutcher Res. Corp.,* 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship,* 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989). If a transaction satisfies the business judgment rule, it should be approved under Section 363(b) of the Bankruptcy Code.

18. Courts have consistently permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.,* 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley* v. *Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert, denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits). The most restrictive standards in cases still allow for the prepetition claims of critical vendors to be paid under Section 363(b)(1) where (a) all unsecured creditors will be better off as a result of the payments, and (b) the critical vendors will refuse to do business with the debtor post-petition without payment of prepetition debt, with the result that the debtor will have no choice but to cease operations. *See Kmart,* 359 F.3d at 872-73 (7th Cir. 2004).

19. Here, the entire success of the Debtors' case depends on Well Services' ability to commence work immediately on its pre-petition decommissioning contracts. Without the revenue generated by these contracts, the Debtors simply will not have the cash flow to

reorganize. And because the value of the Debtors' assets do not exceed the amount of their debt to their secured lender, unsecured creditors will not receive any payment if the Debtors are forced to liquidate. The Debtors submit that paying the Obligations to the Critical Vendors is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.

**B.    Payment of the Obligations is in Furtherance of the Debtors' Fiduciary Duties Under Sections 1107 and 1108 of the Bankruptcy Code**

20.    Pursuant to Bankruptcy Code Sections 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the businesses for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

21. Payment of the Obligations meets each element of the *CoServ* court's standard. The Critical Vendors are companies that the Debtors must deal with in order to commence work on their decommissioning contracts. Indeed, many of the Critical Vendors essentially hold a monopoly on their services in the Gulf of Mexico. Without dealing with the Critical Vendors, Well Services cannot commence work on its decommissioning contracts, and the cash flow that these contracts are expected to generate is essential to the Debtors' reorganization prospects. Finally, the Debtors have attempted to negotiate with the Critical Vendors to provide assurances of payment for post-petition work; nevertheless, the Critical Vendors have refused to do business with the Debtors. Accordingly, there is no other alternative for the Debtors to deal with the Critical Vendors except by paying the Obligations.

**NOTICE**

22. Notice of this Motion will be given to: (a) the U.S. Trustee; (b) counsel to Angelo, Gordon Energy Servicer, LLC; (c) the parties included on each Debtors' list of 20 largest unsecured creditors; (d) the Securities and Exchange Commission; (e) the British Columbia Securities Commission; (f) the Critical Vendors; and (g) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no further notice is necessary for this Court to enter the Order granting the relief requested by this Motion.

WHEREFORE, the Debtors respectfully request that the Court enter the order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: June 16, 2017					Respectfully submitted,

					**BAKER, DONELSON, BEARMAN,
					CALDWELL & BERKOWITZ**
					A Professional Corporation

					By: */s/ Lacey E. Rochester*
					    Jan M. Hayden
					    Louisiana Bar No. 6672
					    Edward H. Arnold III
					    Louisiana Bar No. 18767
					    Lacey E. Rochester
					    Louisiana Bar No. 34733
					    201 St. Charles Avenue, Suite 3600
					    New Orleans, Louisiana 70170
					    Telephone: (504) 566-5200
					    Facsimile: (504) 636-4000
					    jhayden@bakerdonelson.com
					    lrochester@bakerdonelson.com

					    **AND**
					    Susan C. Mathews (*pro hac vice application pending*)
					    Texas Bar No. 05060650
					    Daniel J. Ferretti (*pro hac vice application pending*)
					    Texas Bar No. 24096066
					    1301 McKinney St., Suite 3700
					    Houston, TX 77010
					    (713) 650-9700
					    (713) 650-9701 – Facsimile
					    smathews@bakerdonelson.com
					    dferretti@bakerdonelson.com
					    *Proposed Counsel for the Debtors and Debtors in Possession*

## Exhibit 1

### Critical Vendor List[2]

| Vendor | Description | Proposed Payment |
|---|---|---|
| Island Operating Company, Inc. | Provider of contract production operations and transportation for all Rooster and Cochon properties, including inspections mandated by BSEE. | $403,362.33 |
| DLS LLC | Provider of construction services in the Gulf of Mexico for decommissioning and platform removal. | $254,582.69 |
| Greene's Energy Services | Provider of explosives storage. | $945.00 |
| | **TOTAL** | **$658,890.02** |

---

[2] The Debtors reserve the right to amend or supplement the above Exhibit prior to the hearing on the motion by filing a notice on the docket of these cases.

4835-5318-5098 v4
2909093-000015 06/16/2017